**Bridget FOWLER and Phil Fowler, Appellants**

v.

**TYLER INDEPENDENT SCHOOL DISTRICT, Appellee.**

**No. 12–07–00085–CV.**

Court of Appeals of Texas, Tyler.

Aug. 15, 2007.

Robert D. Bennett, Gilmer, TX, for appellant.

John C. Hardy, Tyler, TX, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

### OPINION

BRIAN HOYLE, Justice.

Bridget and Phil Fowler appeal the trial court's dismissal of their premises liability lawsuit against the Tyler Independent School District (TISD) for want of jurisdiction based upon TISD's sovereign immunity from suit. In their sole issue, the Fowlers assert that, at the time of the injury forming the basis of their lawsuit, TISD was not immune from suit. We affirm.

### BACKGROUND

On December 5, 2003, the Fowlers were attendees as spectators at a high school football playoff game between Gilmer High School and Atlanta High School, two public schools within the State of Texas. TISD, a public school district and governmental unit of the State of Texas, provided the venue for this event, renting their football stadium, Trinity Mother Frances Rose Stadium, to the two schools. During that event, Bridget Fowler slipped and fell, breaking her leg.

On December 1, 2005, almost two years after the incident in question, the Fowlers filed suit against TISD alleging that the stadium was in an unreasonably dangerous condition at the time of the football game and that TISD had failed to properly inspect and maintain the stadium and to provide adequate warnings of the stadium's unsafe condition. On January 5, 2006, TISD filed its original answer. On October 3, 2006, TISD filed a plea to the jurisdiction, alleging sovereign immunity

from suit. The trial court granted TISD's plea. This appeal followed.

### PROPRIETARY CAPACITY

In their sole issue, the Fowlers allege that, at the time of Bridget Fowler's injury, TISD was not immune from suit.

#### Standard of Review

Sovereign immunity from suit defeats a trial court's subject matter jurisdiction. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 639 (Tex.1999). Subject matter jurisdiction is essential to the authority of a trial court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443 (Tex.1993). A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *Starkey ex rel. Ragsdale v. Andrews Ctr.,* 104 S.W.3d 626, 628 (Tex.App.-Tyler 2003, no pet.). If a party believes that the plaintiff's petition does not show jurisdiction and cannot be amended to allege jurisdiction, the party may file a plea to the jurisdiction at any time. *Id.*

Because subject matter jurisdiction presents a question of law, we review the trial court's decision to grant a plea to the jurisdiction de novo. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex. 1998). In reviewing a plea to the jurisdiction, we review the pleadings and any evidence relevant to the jurisdictional issue. *Tex. Dep't of Criminal Justice v. Miller,* 51 S.W.3d 583, 587 (Tex.2001). Standing, which is a component of subject matter jurisdiction, requires the pleader to allege facts that affirmatively demonstrate the trial court's jurisdiction to hear the case. *See Tex. Ass'n of Bus.,* 852 S.W.2d at 446.

#### Discussion

Because it is a governmental unit, a school district is immune from suit

under the doctrine of sovereign immunity. *See LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex.1992). The doctrine of sovereign immunity bars suit against the State unless the State has given consent to be sued. *Mo. Pac. R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 814 (Tex.1970). Here, the Fowlers do not claim that sovereign immunity from suit has been waived by consent. Instead, because TISD was renting its stadium to the two high schools, the Fowlers argue that TISD was acting in a proprietary capacity at the time of Bridget Fowler's injury, and therefore was not protected by sovereign immunity from suit.

In 1884, the Texas Supreme Court first carved out an exception to sovereign immunity by defining a municipality's liability in terms of its governmental and proprietary functions. *See City of Galveston v. Posnainsky*, 62 Tex. 118, 127 (1884). In that case, the court reasoned as follows:

> It would seem that, in so far as municipal corporations ... exercise powers conferred on them for purposes essentially public—purposes pertaining to the administration of general laws made to enforce the general policy of the state,— they should be deemed agencies of the state, and not subject to be sued for any act or omission occurring while in the exercise of such power ...; that, in reference to such matters, they should stand as does sovereignty, whose agents they are, subject to be sued only when the state, by statute, declares they may be.
>
> ....
>
> In so far, however, as they exercise powers not of this character, voluntarily assumed—powers intended for the private advantage and benefit of the locality and its inhabitants,—there seems to be no sufficient reason why they should be relieved from that liability to suit and

measure of actual damage to which an individual or private corporation exercising the same powers for a purpose essentially private would be liable.

*Id.* Although courts in the past have differed on the scope of sovereign immunity and on which subdivisions of the state may exercise proprietary functions, it is now the settled law of this state that sovereign immunity extends to all agencies, political subdivisions, and other institutions that are derived from the state's constitution and laws. *Dillard v. Austin Indep. Sch. Dist.*, 806 S.W.2d 589, 593 (Tex.App.-Austin 1991, writ denied) (per curiam op. on reh'g), *overruled on other grounds by Fed. Sign v. Tex. Southern Univ.*, 951 S.W.2d 401(Tex.1997), *and superseded by statute on other grounds as stated in Gen. Servs. Comm'n v. Little–Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex.2001). The only exception to this general rule of sovereign immunity is that a municipality is not immune for its proprietary functions, the principle expressed in 1884. *Id.* at 593–94.

Here, the Fowlers have asked us to apply this exception, which relates to municipalities, to a school district. However, as early as 1938, the Texas Supreme Court held that

> [t]here is quite a distinction between a school district and a city or town. Cities and towns exercise a dual function, to wit, governmental and proprietary, while a school district is purely a governmental agency and exercises only such powers as are delegated to it by the state. It performs no proprietary functions which are separate and independent of its governmental powers.

*Braun v. Trs. of Victoria Indep. Sch. Dist.*, 114 S.W.2d 947, 950 (Tex.Civ.App.-San Antonio 1938, writ ref'd).

In 1991, the Austin Court of Appeals, applying that precedent, said that

[a]n independent school district is an agency of the state which carries out only governmental functions, and, consequently, is entitled to [sovereign] immunity .... [A] school district has no proprietary functions.... Because we believe that *Braun,* which states that an independent school district carries out only governmental functions, is still the law, we conclude that an independent school district is not a local unit of government similar to a municipality.

*Dillard,* 806 S.W.2d at 594–96; *see also Stout v. Grand Prairie Indep. Sch. Dist.,* 733 S.W.2d 290, 296 (Tex.App.-Dallas1987, writ ref'd n.r.e.) ("Since a school district is purely a governmental agency and exercises only such powers as are delegated to it by the state, it performs no proprietary functions that are separate from governmental functions."); *Gravely v. Lewisville Indep. Sch. Dist.,* 701 S.W.2d 956, 957 (Tex.App.-Fort Worth 1986, no writ) ("[It is a] well established rule of law that generally all authorized functions of a school district are governmental in nature and a school is therefore immune from suit for injuries sustained at any school sponsored activity or function."). This interpretation was recently reaffirmed by the Austin Court. *See Hudspeth v. Chapel Hill I.S.D.,* No. 03–06–00243–CV, 2007 WL 1647818, at *4 (Tex.App.-Austin June 8, 2007, no pet.) (mem.op.). *But see Barr v. Bernhard,* 562 S.W.2d 844, 846 (Tex.1978) ("The law is well settled in this state that an independent school district is an agency of the state and, while exercising governmental functions, is not answerable for its negligence in a suit sounding in tort."); *McManus v. Anahuac Indep. Sch. Dist.,* 667 S.W.2d 275, 278 (Tex.App.-Houston [1st Dist.] 1984, no writ) (declining to decide whether *Barr* is authority for the proposition that a school district can engage in some kind of activity other than governmental functions, and, therefore,

lose its immunity from suit). "No Texas appellate court, so far as we know, has ever held that a school district has served in a non-governmental capacity." *Gravely,* 701 S.W.2d at 957.

■ In this case, TISD is a public school district and, thus, a purely governmental agency that exercises only such powers as are delegated to it by the State of Texas. *See Braun,* 114 S.W.2d at 950; *Dillard,* 806 S.W.2d at 594; *Gravely,* 701 S.W.2d at 957. As such, it could not, as a matter of law, have been acting in a sufficiently proprietary capacity to shed its sovereign immunity at the time of Bridget Fowler's injury. *See id.* Therefore, TISD enjoyed sovereign immunity from suit. *See id.*

■ Even if it were theoretically possible for TISD to act in a proprietary capacity, the result would not change.

Public schools are conducted for the benefit of the entire state ... and it matters not whether such schools are conducted by the trustees of a common school district or trustees of an independent district. It is not a function undertaken for the private advantage and benefit of the locality and its inhabitants.... Education is not of local interest, but is statewide. The state is interested as much in one child's education as another's, and it matters not in what locality it resides.

*Braun,* 114 S.W.2d at 949–50. Therefore, activities of a public school district that contribute to the education of the state's youth are not proprietary because they are not undertaken for the private advantage and benefit of the locality and its inhabitants but for the benefit of the entire state. *Id.; see Posnainsky,* 62 Tex. at 127.

The primary purpose of interscholastic athletic programs is the educational benefit accruing to the students involved in these programs. *Garza ex rel. Garza v.*

*Edinburg Consol. Indep. Sch. Dist.*, 576 S.W.2d 916, 918 (Tex.Civ.App.-Corpus Christi 1979, no writ). Nothing could be more in tune with the governmental function of school districts, providing education benefiting the State of Texas. *Id.* The playoff game in question here was part of a statewide interscholastic athletic program. Like their regular season counterparts, playoff games carry as their primary purpose the education of the students involved. *See id.; see also Gravely*, 701 S.W.2d at 957. Further, because such playoff games educate students, they, as part of the statewide public school system, serve to benefit the State of Texas in the same way as any other public educational activity. *See Gravely*, 701 S.W.2d at 957; *Garza*, 576 S.W.2d at 918.

The fact that TISD rented the stadium in question does not affect this reasoning. This was not a proprietary act but a cooperative sharing of resources among three school districts. These districts were essentially sharing their resources in a way that better allocated them for the benefit of the statewide public school system. As a result of this allocation, TISD was provided additional funds to further its mission of education while the other districts were provided a venue for an interscholastic school function, a primarily educational event. Therefore, even if it were possible for TISD to act in a proprietary capacity, *it was not doing so* at the time of the injury in question. *See Braun*, 114 S.W.2d at 949–50; *Gravely*, 701 S.W.2d at 957; *Garza*, 576 S.W.2d at 918. We overrule the Fowlers' sole issue.

### DISPOSITION

We *affirm* the trial court's order of dismissal.