ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

May 14, 2010

The Honorable Rob Eissler
Chairman, Committee on Public Education
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0774

Re: Whether school district resources may be used to process payroll deductions to fund political donations (RQ-0688-GA)

Dear Representative Eissler:

You have requested that we answer the question submitted by your colleague, Representative Leo Berman, who asked, "Is it permissible for government resources to be utilized to process government paycheck deductions for political campaign donations?"[1] He limited his analysis to whether a school district may process a payroll deduction for political contributions to a political committee. *See* Request Letter at 1–3. We limit our analysis accordingly. *See* Tex. Att'y Gen. Op. Nos. GA-0670 (2008) at 2 n.2, JC-0521 (2002) at 2, DM-42 (1991) at 1 (limiting analysis to issues discussed in the opinion request letter).

I.      Background

The Request Letter notes that the Texas State Teachers Association ("TSTA") provides its members and prospective members a form on which they may authorize their school district employers to make automatic, monthly deductions from their paychecks for payment to the TSTA Political Action Committee ("TSTA-PAC") and the National Education Association Fund for Children and Public Education ("NEA-Fund"), which is also a political action committee.[2] *See* Request Letter at 2 (citing Texas State Teachers Association/National Education Agency Enrollment Form[3] and TSTA-PAC Direct Debit Authorization Form[4]). Completed forms are forwarded to school districts, which process the authorizations and deduct the political contributions to TSTA-PAC and NEA-Fund from employees' paychecks. Request Letter at 2. According to the Request

---

[1]*See* Request Letter from Honorable Leo Berman, Former Chair, Committee on Elections, Texas House of Representatives at 1 (Mar. 18, 2008), *available at* http://www.texasattorneygeneral.gov.

[2]The Request Letter uses the acronym "NEA-PAC"; the acronym "NEA-Fund" is indicated on the enrollment form and is used on the National Education Association ("NEA") website.

[3]*Available at* http://www.tsta.org/includes/images/Fallform.pdf (last visited May 11, 2010).

[4]*Available at* http://www.tsta.org/legislative/update/PACnew.pdf (last visited May 11, 2010).

Letter, school district resources are used to set up the deductions and facilitate the transfer of funds to TSTA-PAC and NEA-Fund. *Id.*

## II.     Legal Analysis

School districts may process payroll deductions only if their authority to do so is expressly granted by the constitution or statutes or necessarily implied therefrom. *See Geffert v. Yorktown Indep. Sch. Dist.*, 290 S.W. 1083, 1084 (Tex. Comm'n App. 1927) (explaining that independent school districts have only those powers specifically given or implied as a necessary incident to those expressly conferred and that their powers must be exercised in strict conformity with the mandatory direction of the Legislature); *Fowler v. Tyler Indep. Sch. Dist.*, 232 S.W.3d 335, 338–39 (Tex. App.—Tyler 2007, pet. denied) (noting that a public school district exercises only those powers that the state delegates to it); Tex. Att'y Gen. Op. No. GA-0596 (2008) at 2 n.2 (same).

### A.     Express Statutory Authority

We have not found, and no briefing to this office has identified, any statute specifically authorizing a school district to provide payroll deductions for political contributions to political committees.[5] The Request Letter discusses section 22.001 of the Education Code, which provides, "A school district employee is entitled to have an amount deducted from the employee's salary for membership fees or dues to a professional organization." TEX. EDUC. CODE ANN. § 22.001(a) (Vernon 2006). We review section 22.001 to determine whether it authorizes payroll deductions for political contributions to political committees. School districts would have express statutory authority to utilize governmental resources to process such deductions for contributions to TSTA-PAC and NEA-Fund under section 22.001 if TSTA-PAC and NEA-Fund were "professional organizations" and the deductions were "membership fees or dues."

No statute, rule, or appellate court opinion defines the term "professional organization" as used in section 22.001(a). Nor were we provided any information, briefing, or analysis attempting to define the term. When statutory terms are undefined, they are to be construed according to their common meaning. TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005). Texas courts rely on dictionaries to determine the meaning of terms not defined in statute. *See Ctr. Point Energy Entex v. R.R. Comm'n*, 208 S.W.3d 608, 619 (Tex. App.—Austin 2006, pet. dism'd) (explaining that Texas courts may rely on commonly-used dictionaries to discern the plain meaning of statutory terms) (citing *Powell v. Stover*, 165 S.W.3d 322, 326 (Tex. 2005)); Tex. Att'y Gen. Op. No. JC-0577 (2002) at 2 (relying on a dictionary to determine the meaning of an undefined term in the Texas Education

---

[5]TSTA-PAC is a general purpose political committee under chapter 251 of the Texas Election Code. *See* TEX. ELEC. CODE ANN. § 251.001(14)(A)–(B) (Vernon 2010) (defining a general purpose political committee). *See also* TEXAS ETHICS COMMISSION, ACTIVE POLITICAL COMMITTEES (PACS) AND THEIR TREASURERS (listing TSTA-PAC as a general purpose committee), *available at* http://www.ethics.state.tx.us/tedd/paclistc.htm (last visited May 11, 2010). NEA-Fund is a political committee established under federal law and regulated by the Federal Election Commission ("FEC"). *See* FEC FORM 1, STATEMENT OF ORGANIZATION, NEA FUND FOR CHILDREN AND EDUCATION at 2 (reporting that NEA-Fund is a political action committee that is a separate segregated fund under federal law), *available at* http://images.nictusa.com/pdf/736/29991868736/29991868736.pdf#navpanes=0 (last visited May 11, 2010).

Code). A commonly-used dictionary defines a "professional association" as "[a] group of *professionals organized* for education, social activity, or lobbying, such as a bar association." BLACK'S LAW DICTIONARY 141 (9th ed. 2009) (emphasis added). The noun "organization" means: "A body of persons (such as a union or corporation) formed for a common purpose. – Also termed *society.*" *Id.* at 1210. The adjective "professional" means "of, relating to, or characteristic of a profession." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 991 (11th ed. 2004); *see also id.* (defining the noun "profession" as "a calling requiring specialized knowledge and often long and intensive academic preparation"). These definitions suggest that the term "professional organization" could be defined as a group of professionals organized for a common purpose relating to their profession.[6]

In order to determine whether TSTA-PAC and NEA-Fund are groups of professionals organized for a common purpose relating to their profession for purposes of Education Code section 22.001, we contrast the functions of TSTA and NEA from those of TSTA-PAC and NEA-Fund. TSTA-PAC is a general purpose political committee under chapter 251 of Texas Election Code. *See supra* note 5. Section 251.001 describes a "general-purpose committee" as a "political committee that has among its principal purposes: supporting or opposing: two or more candidates who are unidentified or are seeking offices that are unknown; or one or more measures that are unidentified; or assisting two or more officeholders who are unidentified." TEX. ELEC. CODE ANN. § 251.001(14)(A)–(B) (Vernon 2010) (internal notations omitted). NEA-Fund is a political committee and separate segregated fund ("SSF") regulated by the FEC. *See supra* note 5. NEA-Fund collects contributions to make contributions, expenditures, and political communications to influence federal elections. *See* FEC, SEPARATE SEGREGATED FUNDS AND NON-CONNECTED PACS.[7] Thus, political committees perform a somewhat narrow range of state and federally-regulated political-functions.[8]

NEA is a federally-chartered corporation formed to advance the profession of teaching and promote the cause of education in America. 36 U.S.C.A. §§ 151101, 151102 (2001). TSTA is a

---

[6]The meaning of the term "professional organization" as it is used throughout the Education Code is consistent with that definition. *See, e.g.*, TEX. EDUC. CODE ANN. §§ 61.090(c)(2) (Vernon 2006) (providing that "professional organizations" disseminate "assessment and care protocols" as well as "informational materials regarding the professional, organizational, and managerial capacities necessary to advance the quality of care in long-term care facilities"), 132.002(a)(5) (Vernon Supp. 2009) (indicating that "professional organizations" sponsor courses for their members), 1001.002(c)(4) (Vernon Supp. 2009) (providing that "professional organizations" sponsor driving education courses to instruct their members). *See also* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) (providing that words and phrases shall be read in context); *Monsanto v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 940 (Tex. 1993) (interpreting a statutory term by analyzing its use in other statutes).

[7]*Available at* http://www.fec.gov/pages/brochures/ssfvnonconnected.pdf (last visited May 11, 2010).

[8]*See, e.g.*, TSTA/NEA 2009–10 ENROLLMENT FORM (stating that TSTA-PAC and NEA-Fund "collect voluntary contributions from Association members and use these contributions for political purposes, including, but not limited to, making contributions to and expenditures on behalf of friends of public education who are candidates for federal office"), *available at* http://www.tsta.org/includes/images/Fallform.pdf (last visited May 11, 2010).

non-profit corporation organized for educational and scientific purposes.[9] TSTA performs many functions associated with professional organizations, such as offering its members teaching workshops, online classes through the NEA Academy, and summer leadership-academies. *See* About TSTA/NEA.[10] TSTA also offers Educational Support Professional Conferences and professional awards programs. *See* TSTA LOCAL ASSOCIATIONS.[11] In addition to its educational programs, TSTA offers its members access to discounted products and services, the ability to purchase health-care coverage, legal liability coverage, and access to NEA programs. *See* ABOUT TSTA/NEA, *supra* note 11. In summary, TSTA and NEA appear to be groups of professionals organized for a purpose relating to their profession, while TSTA-PAC and NEA-Fund appear merely to collect contributions and make contributions, expenditures, and political communications to influence elections.

In order for a school district to have authority to process the payroll deductions for contributions to TSTA-PAC and NEA-Fund, not only would those political committees have to be "professional organizations" for purposes of section 22.001, but school district employees' contributions to them would also have to be membership fees or dues. *See* TEX. EDUC. CODE ANN. § 22.001(a) (Vernon 2006) (providing a school district employee is entitled to have an amount deducted from the employee's salary for membership fees or dues to professional organizations). The Education Code does not define the terms "membership fees" and "dues" and we received no briefing that attempted to define them. However, the terms "membership fees" or "dues" commonly denote a fixed amount of money due or owed in exchange for membership status. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 740 (9th ed. 1990) (defining the noun "membership" as "the state or status of being a member"), *id.* at 454 (defining the noun "fee" as a "fixed charge"), *id.* at 387 (defining the noun "due" as "something due or owed . . . a payment or obligation required by law or custom").

In contrast to the fixed amount of money due or owed in exchange for membership in a professional organization, political contributions do not confer membership status on the contributor. *See* TEX. ELEC. CODE ANN. § 251.001(3) (Vernon 2010) (defining a "campaign contribution" as a contribution to a "political committee *offered* or *given* with the intent that it be used in connection with a campaign for elective office or on a measure") (emphasis added). *See also* 11 C.F.R. § 114.5 (2010) (requiring that contributions to SSFs be voluntary). Accordingly, the FEC contrasts

---

[9]*See* TEX. BUS. ORG. CODE ANN. §§ 22.001(5) (Vernon 2009) (defining "nonprofit corporation" as "a corporation no part of the income of which is distributable to a member, director, or officer of the corporation"); 402.005 (providing that, with some exceptions, the Texas Business Organizations Code applies to an entity created before January 1, 2006). *See also* TEXAS STATE TEACHERS ASSOCIATION, ARTICLES OF INCORPORATION at 2 (July 24, 1923) (creating the TSTA as an educational and scientific corporation), *id.* ARTICLES OF AMENDMENT TO THE ARTICLES OF INCORPORATION at 1 (June 3, 1982) (amending the TSTA Articles of Incorporation) (both on file with the Texas Secretary of State).

[10]*Available at* http://www.tsta.org/inside/about/index.shtml (last visited May 11, 2010).

[11]*Available at* http://www.tsta.org/inside/locals/ (noting that TSTA held several Educational Support Conferences) (last visited May 11, 2010); *see also* TSTA/NEA AWARDS PROGRAMS (describing TSTA's awards programs), *available at* http://www.tsta.org/news/current/awards.shtml (last visited May 11, 2010).

membership fees or dues to a professional organization from contributions made to political committees. *See* FEDERAL ELECTION COMMISSION CAMPAIGN GUIDE, CORPORATIONS AND LABOR ORGANIZATIONS at 19 (Jan. 2007)[12] (noting that an "SSF may not use dues or fees obtained as a condition of membership or employment in the *connected organization*, even if the dues or fees are refundable upon request").

We note that briefs received by our office arguing that school districts have authority to process the payroll deductions for contributions to political committees do not claim that such deductions constitute membership fees or dues. Instead, like state and federal law, the briefs consistently distinguish political-committee contributions from membership fees and dues. *See* Brief of Texas State Teachers Association/National Education Association at 3 (Apr. 21, 2008) (noting that "TSTA has the responsibility of separating dues and PAC deductions in accordance with state and federal election laws. Thus, school districts do not expend any other effort or resources to process a PAC contribution than what they are already required to do by law for a dues deduction.") [hereinafter TSTA Brief]; Brief of Texas Classroom Teachers Association at 10 n.3 (May 5, 2008) (distinguishing "contributions to the political action committee affiliated with the Texas Classroom Teachers Association" from "association dues that members can have withheld from their paychecks pursuant to Section 22.001, Texas Education Code"); Brief of Texas American Federation of Teachers at 2 (May 5, 2008) ("No Texas statute prohibits an independent school district from including an authorized contribution to a political action committee when it makes the authorized deduction for membership dues.").

Accordingly, a court would likely conclude that contributions to political committees such as TSTA-PAC and NEA-Fund are not membership fees or dues to professional organizations. As a result, a school district would not have express authority to process payroll deductions for contributions to TSTA-PAC or NEA-Fund under section 22.001 of the Education Code.

## B.     Implied Authority

Having concluded that school districts do not have express authority to process payroll deductions for political contributions, we turn to the question of their implied authority. School districts have implied authority to perform acts that are reasonably necessary to carry out their expressly-granted duties. *Geffert*, 290 S.W. at 1084. A court would determine whether a statute impliedly authorizes a school district's act by determining whether the act would be necessary in order for the district to use its statutorily-prescribed powers. *See Thompson v. Elmo Indep. Sch. Dist.*, 269 S.W. 868, 870 (Tex. Civ. App.—Waco 1925, no writ) (noting that a school district has implied powers that are indispensable, rather than merely convenient, to its declared objects and purposes) (citing *Foster v. City of Waco*, 255 S.W. 1104, 1105–06 (Tex. 1923)).

In determining whether school districts' express authority to process payroll deductions for membership fees or dues to professional organizations necessarily implies authority to process contributions to political committees, we first note that TSTA appears to conclude that districts may

---

[12]*Available at* http://www.fec.gov/pdf/colagui.pdf (last visited May 11, 2010).

process membership dues without processing contributions to political committees.[13] Furthermore, school districts may process expressly-authorized deductions for their employees' health-plan expenses and child-care expenses without any apparent need to also process deductions for contributions to political committees. *See* TEX. EDUC. CODE ANN. § 22.005 (Vernon 2006), TEX. INS. CODE ANN. art. 3.51 (Vernon 2009) (authorizing school districts to deduct health-care expenses from their employees' paychecks); *see also* TEX. GOV'T CODE ANN. § 610.021 (Vernon 2004) (authorizing school districts to enter into agreements with their employees to reduce their employees' periodic compensation by an amount to be paid for child-care expenses). *Compare* TEX. EDUC. CODE ANN. § 22.002(b) (Vernon 2006) (requiring, upon satisfaction of certain requirements, a school district to honor its employees' assignment, pledge, or transfer of salary or wages as security for indebtedness). Thus, the Legislature's decision to grant school districts express power to process payroll deductions for specific purposes indicates that it did not necessarily grant school districts the power to process payroll deductions for non-specified purposes. *See Old Am. County Mut. Insur. Fire Co. v. Sanchez*, 149 S.W.3d 111, 115 (Tex. 2004) (presuming that every word of a statute is included or excluded for a reason); *see also Brookshire v. Houston Indep. Sch. Dist.*, 508 S.W.2d 675, 679 (Tex. Civ. App.—Houston [14th Dist.] 1974, no writ) (finding that a law did not apply to a school district beyond the specified terms of the law because "the 'inclusion of the specific limitation excludes all others'") (citing *Harris County v. Crooker*, 248 S.W. 652, 655 (Tex. 1923)).

Indeed, if school districts' express authority to process payroll deductions for membership fees or dues to professional organizations granted districts implicit authority to process deductions for other purposes, the Legislature would not have granted districts express authority to process deductions for other purposes, including health-care and child-care expenses. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 636 (Tex. 2008) (explaining that the Legislature is presumed not to have done a useless act). *See also Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) (noting that the Legislature is presumed to have enacted a statute with complete knowledge of the existing law and with reference to it). Accordingly, a court would likely find that school districts do not have implied statutory-authority to process payroll deductions for political committee contributions.

The conclusion that the Legislature did not impliedly grant districts authority to process payroll deductions for contributions to political committees is consistent with the Legislature's general aversion to the use of public funds for political purposes. *See, e.g.*, TEX. EDUC. CODE ANN. § 11.169 (Vernon Supp. 2009) ("Notwithstanding any other law, the board of trustees of an independent school district may not use state or local funds or other resources of the district to electioneer for or against any candidate, measure, or political party."); TEX. GOV'T CODE ANN. § 556.004(a) (Vernon 2004) (noting that "[a] state agency may not use any money under its control, including appropriated money, to finance or otherwise support the candidacy of a person for an office in the legislative, executive, or judicial branch of state government or of the government of the United States").

---

[13]*See* TSTA/NEA 2009–10 ENROLLMENT FORM (allowing TSTA members to authorize payroll deductions for TSTA/NEA membership dues while declining to authorize payroll deductions for TSTA-PAC and NEA-Fund contributions), *available at* http://www.tsta.org/includes/images/Fallform.pdf (last visited May 11, 2010); *see also* TSTA Brief at 3 (noting that the amount deducted under section 22.001 of the Education Code would include a PAC contribution only if the employee chooses to make a PAC contribution).

## C.    First Amendment Freedom of Speech

We received several briefs that questioned whether prohibiting payroll deductions for political contributions would be unconstitutional. *See, e.g.*, TSTA Brief at 4–7. The United States Supreme Court recently considered this question. It ruled that a state's "ban on political payroll deductions" is "justified by the State's interest in avoiding the reality or appearance of government favoritism or entanglement with partisan politics." *Ysursa v. Pocatello Educ. Ass'n.*, 129 S. Ct. 1093, 1098 (2009). In the *Ysursa* case, the question before the Court was "whether the State must affirmatively assist political speech by allowing public employers to administer payroll deductions for political activities. For the reasons set forth in [the] opinion, the answer is no." *Id.* at 1101. The Supreme Court found that the state's ban on political payroll deductions did not infringe the exercise of First Amendment rights. *Id.* at 1098. Consequently, the Legislature's decision not to authorize school districts to process deductions for contributions to political committees would likely withstand a constitutional challenge.[14]

## D.    Penal Code Section 39.02

Finally, it is argued that the "use of public resources to collect and distribute political donations would appear to be a criminal misapplication of state resources which violates Penal Code [section] 39.02." Request Letter at 2–3. In order to commit an offense under section 39.02 of the Penal Code, a public servant would have to "with intent to obtain a benefit or with intent to harm or defraud another . . . intentionally or knowingly . . . misuse[] government property, services, personnel, or any other thing of value." TEX. PENAL CODE ANN. § 39.02(a)(2) (Vernon Supp. 2009). Proof of a public servant's culpable mental state is a fact question that cannot be resolved in the opinion process. Tex. Att'y Gen. Op. No. GA-0326 (2005) at 6. Thus, we cannot determine as a matter of law whether the processing of payroll deductions for contributions to political committees by school district staff on school district computers would violate Penal Code section 39.02(a)(2).

---

[14]Neither this opinion nor the *Ysursa* case affects a school district employee's right to contribute to political committees by a process other than a publicly-administered payroll deduction.

# S U M M A R Y

Under longstanding Texas case law, school districts have only that authority expressly or impliedly granted by the Legislature.

The Legislature expressly authorizes school districts to process school district employees' payroll deductions for health-care expenses, child-care costs, security for indebtedness, and membership fees or dues to professional organizations. However, the Legislature has not expressly authorized school districts to process payroll deductions for contributions to political committees such as TSTA-PAC and NEA-Fund.

The Legislature impliedly authorizes school districts to undertake those activities that school districts would need to do in order to exercise the authority that the Legislature expressly granted them. However, the Legislature has not impliedly authorized school districts to process payroll deductions for contributions to political committees such as TSTA-PAC and NEA-Fund because doing so would not be necessary to perform school districts' expressly authorized functions.

Because the Legislature has not expressly or impliedly authorized school districts to process payroll deductions for contributions to political committees such as TSTA-PAC and NEA-Fund, Texas law prohibits school districts from processing such contributions.

The Legislature's decision not to authorize school districts to process payroll deductions for contributions to political committees would likely withstand a constitutional challenge.

Proof of a public servant's culpable mental state is a fact question that cannot be resolved in the opinion process. Thus, we cannot determine as a matter of law whether the processing of payroll deductions for contributions to political committees by school district staff on school district computers would violate section 39.02(a)(2) of the Penal Code.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Christy Drake-Adams
Assistant Attorney General, Opinion Committee