*355 Chief Justice Roberts
delivered the opinion of the Court.
Under Idaho law, a public employee may elect to have a portion of his wages deducted by his employer and remitted to his union to pay union dues. He may not, however, choose to have an amount deducted and remitted to the union’s political action committee, because Idaho law prohibits payroll deductions for political activities. A group of unions representing Idaho public employees challenged this limitation. They conceded that the limitation was valid as applied at the state level, but argued that it violated their First Amendment rights when applied to county, municipal, school district, and other local public employers.
We do not agree. The First Amendment prohibits government from “abridging the freedom of speech”; it does not confer an affirmative right to use government payroll mechanisms for the purpose of obtaining funds for expression. Idaho’s law does not restrict political speech, but rather declines to promote that speech by allowing public employee checkoffs for political activities. Such a decision is reasonable in light of the State’s interest in avoiding the appearance that carrying out the public’s business is tainted by partisan political activity. That interest extends to government at the local as well as state level, and nothing in the First Amendment prevents a State from determining that its political subdivisions may not provide payroll deductions for political activities.
I
Idaho’s Right to Work Act declares that the “right to work shall not be infringed or restricted in any way based on membership in, affiliation with, or financial support of a labor organization or on refusal to join, affiliate with, or financially or otherwise support a labor organization.” 1985 Idaho Sess. Laws ch. 2, § 1 (codified at Idaho Code § 44-2001 (Michie 2003)). As part of that policy, the Act prohibits any requirement for the payment of dues or fees to a labor organization *356 as a condition of employment, § 44-2003, but authorizes employers to deduct union fees from an employee’s wages with the employee’s “signed written authorization,” §44-2004(1). The Act covers all employees, “including all employees of the state and its political subdivisions.” §44-2011.
Prior to 2003, employees could authorize both a payroll deduction for general union dues and a payroll deduction for union political activities conducted through a political action committee. App. 55-56,83-84. In 2003, the Idaho Legislature passed the Voluntary Contributions Act (VCA). 2003 Sess. Laws chs. 97 and 340 (codified at Idaho Code §§ 44-2601 through 44-2605, and §44-2004). That legislation, among other things, amended the Right to Work Act by adding a prohibition on payroll deductions for political purposes. That amendment provides: “Deductions for political activities as defined in chapter 26, title 44, Idaho Code, shall not be deducted from the wages, earnings or compensation of an employee.” §44-2004(2). The term “political activities” is defined as “electoral activities, independent expenditures, or expenditures made to any candidate, political party, political action committee or political issues committee or in support of or against any ballot measure.” § 44-2602(l)(e). Violations of § 44-2004(2) are punishable by a fine not exceeding $1,000 or up to 90 days of imprisonment, or both. § 44-2007.
Shortly before the VCA was to take effect, plaintiff labor organizations sued the Bannock County prosecuting attorney, the Idaho secretary of state, and the Idaho attorney general in their official capacities, alleging that the ban on political payroll deductions was unconstitutional under the First and Fourteenth Amendments to the United States Constitution. App. 18-41.[1] The District Court rejected that argu *357 ment with respect to public employers at the state level, concluding that the First Amendment does not compel the State “to subsidize speech by providing, at its own expense, payroll deductions for the purpose of paying union dues or association fees for State employees.” Pocatello Ed. Assn. v. Heideman, 2005 WL 3241745, *2 (D Idaho, Nov. 23, 2005). The ban was valid at the state level because “the State is incurring costs to set up and maintain the [payroll deduction] program.” Ibid. The court struck down the VC A, however, “to the extent that it applies to local governments and private employers,” because the State had failed to identify any subsidy it provided to such employers to administer payroll deductions. Id., at *2 (footnote omitted), *6.
The state defendants appealed, contending that the ban on political payroll deductions may be constitutionally applied to local government employees. Pocatello Ed. Assn. v. Heideman, 504 F. 3d 1053, 1057 (CA9 2007). Neither party challenged the District Court’s rulings as to private and state-level employees, and therefore the only issue remaining concerned application of the ban to local government employees.
The Court of Appeals agreed with the District Court that there was “no subsidy by the State of Idaho for the payroll deduction systems of local governments.” Id., at 1059. The appellate court remarked that “the generalized lawmaking power held by the legislature with respect to a state’s political subdivisions does not establish that the state is acting as a proprietor” with respect to local government em *358 ployers. Id., at 1064. The court instead regarded the relationship between the State and its political subdivisions as analogous to that between the State and a regulated private utility. See id., at 1063-1065 (citing Consolidated Edison Co. of N. Y. v. Public Serv. Comm’n of N. Y., 447 U. S. 530 (1980)). While “Idaho has the ultimate power of control over the units of government at issue,” it did not “actually operat[e] or contro[l] the payroll deduction systems of local units of government.” 504 F. 3d, at 1068. The court therefore applied strict scrutiny to Idaho’s decision to prevent local government employers from allowing payroll deductions for political purposes, and held the statute unconstitutional as applied at the local level. Ibid.
We granted certiorari, 552 U. S. 1294 (2008), and now reverse.
II
Restrictions on speech based on its content are “presumptively invalid” and subject to strict scrutiny. Davenport v. Washington Ed. Assn., 551 U. S. 177, 188 (2007); R. A. V. v. St. Paul, 505 U. S. 377, 382 (1992). The unions assert that the ban on checkoffs for political activities falls into this category because the law singles out political speech for disfavored treatment.
The First Amendment, however, protects the right to be free from government abridgment of speech. While in some contexts the government must accommodate expression, it is not required to assist others in funding the expression of particular ideas, including political ones. “[A] legislature’s decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny.” Regan v. Taxation With Representation of Wash., 461 U. S. 540, 549 (1983); cf. Smith v. Highway Employees, 441 U. S. 463, 465 (1979) (per curiam) (“First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize [a labor] association and bargain with it”).
*359 The court below concluded, and Idaho does not dispute, that “unions face substantial difficulties in collecting funds for political speech without using payroll deductions.” 504 F. 3d, at 1058. But the parties agree that the State is not constitutionally obligated to provide payroll deductions at all. See Plaintiffs’ Reply Memorandum 10; see also Toledo Area AFL-CIO Council v. Pizza, 154 F. 3d 307, 319-320 (CA6 1998); cf. Charlotte v. Firefighters, 426 U. S. 283, 286 (1976) (“Court would reject. .. contention ... that respondents’ status as union members or their interest in obtaining a dues checkoff... entitle[s] them to special treatment under the Equal Protection Clause”). While publicly administered payroll deductions for political purposes can enhance the unions’ exercise of First Amendment rights, Idaho is under no obligation to aid the unions in their political activities. And the State’s decision not to do so is not an abridgment of the unions’ speech; they are free to engage in such speech as they see fit. They simply are barred from enlisting the State in support of that endeavor. Idaho’s decision to limit public employer payroll deductions as it has “is not subject to strict scrutiny” under the First Amendment. Regan, 461 U. S., at 549.
Given that the State has not infringed the unions’ First Amendment rights, the State need only demonstrate a rational basis to justify the ban on political payroll deductions. Id., at 546-551. The prohibition is not “aim[ed] at the suppression of dangerous ideas,” id., at 548 (internal quotation marks omitted), but is instead justified by the State’s interest in avoiding the reality or appearance of government favoritism or entanglement with partisan politics. We have previously recognized such a purpose in upholding limitations on public employee political activities. See Civil Service Comm’n v. Letter Carriers, 413 U. S. 548, 565 (1973) (public perception of partiality can undermine confidence in representative government); Public Workers v. Mitchell, 330 U. S. 75, 96-100 (1947) (Congress may limit political acts by *360 public officials to promote integrity in the discharge of official duties); cf. Cornelius v. NAACP Legal Defense & Ed. Fund, Inc., 473 U. S. 788, 809 (1985) (limitations on speech may be justified by interest in “avoiding the appearance of political favoritism”); Greer v. Spock, 424 U. S. 828, 839 (1976) (upholding policy aimed at keeping official military activities “wholly free of entanglement with partisan political campaigns of any kind”). Banning payroll deductions for political speech similarly furthers the government’s interest in distinguishing between internal governmental operations and private speech. Idaho’s decision to allow payroll deductions for some purposes but not for political activities is plainly reasonable.[2]
Davenport guides our resolution here. That case also involved a distinction based on the content of speech: Specific consent was required from nonunion members before agency fees charged to them could be used for election-related activities, but consent was not required with respect to agency fees used for other purposes. 551 U. S., at 181-182. We rejected the unions’ argument that this requirement violated *361 the First Amendment because it turned on the content of the speech at issue. Id., at 188-190. We recognized that the statute, rather than suppressing union speech, simply declined to assist that speech by granting the unions the right to charge agency fees for election activities. That decision was reasonable given the State’s interest in preserving the integrity of the election process. Ibid. We also concluded that the State did “not have to enact an across-the-board limitation ... to vindicate [its] more narrow concern.” Id., at 189.
Here the restriction is on the use of a checkoff to fund political activities, but the same analysis governs. Idaho does not suppress political speech but simply declines to promote it through public employer checkoffs for political activities. The concern that political payroll deductions might be seen as involving public employers in politics arises only because Idaho permits public employer payroll deductions in the first place. As in Davenport, the State’s response to that problem is limited to its source — in this case, political payroll deductions. The ban on such deductions plainly serves the State’s interest in separating public employment from political activities.[3]
*362 III
The question remains whether the ban is valid at the local level. The unions abandoned their challenge to the restriction at the state level, but contend that strict scrutiny is still warranted when the ban is applied to local government employers. In that context, the unions argue, the State is no longer declining to facilitate speech through its own payroll system, but is obstructing speech in the local governments’ payroll systems. See Brief for Respondents 44-46. We find that distinction unpersuasive, and hold that the same deferential review applies whether the prohibition on payroll deductions for political speech is directed at state or local governmental entities.
“Political subdivisions of States — counties, cities, or whatever — never were and never have been considered as sovereign entities.” Reynolds v. Sims, 377 U. S. 533, 575 (1964). They are instead “subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions.” Ibid.; see also Louisiana ex rel. Folsom v. Mayor and Administrators of New Orleans, 109 U. S. 285, 287 (1883) (“Municipal corporations are instrumentalities of the State for the convenient administration of government within their limits”). State political subdivisions are “merely . . . department^] of the State, and the State may withhold, grant or withdraw powers and privileges as it sees fit.” Trenton v. New Jersey, 262 U. S. 182, 187 (1923). Here the Idaho Legislature has elected to withhold from all public employers the power to provide payroll deductions for political activities.
The State’s legislative action is of course subject to First Amendment and other constitutional scrutiny whether that *363 action is applicable at the state level, the local level, both, or some subpart of either. But we are aware of no case suggesting that a different analysis applies under the First Amendment depending on the level of government affected, and the unions have cited none. The ban on political payroll deductions furthers Idaho’s interest in separating the operation of government from partisan politics. That interest extends to all public employers at whatever level of government.
In reaching the opposite conclusion, the Court of Appeals invoked our decision in Consolidated Edison Co. of N. Y. v. Public Serv. Comm’n of N. Y., 447 U. S. 530. In that case, we held that a state commission could not, consistent with the First Amendment, prohibit a privately owned electric utility from discussing controversial issues in its bill inserts. Id., at 544. We ruled that the fact that the State regulated the utility did not authorize the prohibition. Id., at 540. The Court of Appeals concluded that the same analysis applied here, and that “the State’s broad powers of control over local government entities are solely those of a regulator, analogous to the [state commission’s] regulatory powers over [the private utility].” 504 F. 3d, at 1065.
That analogy is misguided. A private corporation is subject to the government’s legal authority to regulate its conduct. A political subdivision, on the other hand, is a subordinate unit of government created by the State to carry out delegated governmental functions. A private corporation enjoys constitutional protections, see First Nat. Bank of Boston v. Bellotti, 435 U. S. 765, 778, n. 14 (1978), but a political subdivision, “created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator.” Williams v. Mayor of Baltimore, 289 U. S. 36, 40 (1933); see Trenton v. New Jersey, supra, at 185 (municipality, as successor to a private water company, does not enjoy against the State the same constitutional rights as *364 the water company: “The relations existing between the State and the water company were not the same as those between the State and the City”).
Both the District Court and the Court of Appeals found it significant that “there is no subsidy by the State of Idaho for the payroll deduction systems of local governments.” 504 F. 3d, at 1059; see also 2005 WL 3241745, *2. The Court of Appeals emphasized that there was no evidence that “Idaho has attempted to use its asserted powers to manage the day-to-day operations of local government personnel.” 504 F. 3d, at 1067. Given the relationship between the State and its political subdivisions, however, it is immaterial how the State allocates funding or management responsibilities between the different levels of government. The question is whether the State must affirmatively assist political speech by allowing public employers to administer payroll deductions for political activities. For the reasons set forth in this opinion, the answer is no.
* * *
The Court of Appeals ruling that Idaho Code § 44-2004(2) is unconstitutional with respect to local units of government is reversed.

It is so ordered.

 The unions also challenged other provisions of the VCA, including one requiring labor organizations to establish a “separate segregated fund” for political activities. Idaho Code §§ 44-2601 through 44-2605 (Michie 2003); see App. 27-34. In response to that challenge, the State agreed to strike “all of the VCA except for its ban on political payroll deductions.” Poca *357 tello Ed. Assn. v. Heideman, 2005 WL 3241745, *1 (D Idaho, Nov. 23,2005). The State assérted that the ban could be “given effect since it operates without reference to the existence of a separate segregated fund.” Ibid. (internal quotation marks omitted). The unions do not dispute that the ban on political payroll deductions is severable from the other challenged provisions. Plaintiffs’ Reply Memorandum in Support of Their Motion for Summary Judgment and in Opposition to the State Defendants’ Motion for Summary Judgment in No. Civ. 03-256-E-BLW (D Idaho, Aug. 15, 2005), p. 3 (hereinafter Plaintiffs’ Reply Memorandum).

 Justice Bkeyer finds this analysis inapplicable because the challenged provision removes politically related deductions from an existing system. Post, at 366 (opinion concurring in part and dissenting in part). But available deductions do not have tenure; a legislature is free to address concerns as they arise.
Justice Breyer would also subject the ban to more exacting scrutiny by analogizing it to various direct restrictions on expression. See post, at 367-368. That analogy misses the mark. A decision not to assist fund-raising that may, as a practical matter, result in fewer contributions is simply not the same as directly limiting expression. Cf. Regan v. Taxation With Representation of Wash., 461 U. S. 540, 550 (1983) (“Although [a union] does not have as much money as it wants, and thus cannot exercise its freedom of speech as much as it would like, the Constitution does not confer an entitlement to such funds as may be necessary to realize all the advantages of that freedom” (internal quotation marks omitted)). We therefore would not subject Idaho’s statute to the “open-ended rough-and-tumble of factors” proposed by the dissent as an alternative to rational basis review. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U. S. 527, 547 (1995); see post, at 368.

 Justice Breyer suggests that the han on political payroll deductions may not be applied evenhandedly to all politically related deductions. Post, at 369-370. Justice Stevens goes further and would find the ban unconstitutional in all its applications as discriminatory. Post, at 370 (dissenting opinion). The District Court, however, noted that the ban “is not viewpoint-based,” 2005 WL 3241745, *3; the unions acknowledged in their Court of Appeals brief that they “have not attempted to establish that Section 44-2004(2) is based on viewpoint discrimination,” Brief for Plaintiffs-Appellees in No. 06-35004 (CA9), p. 18, n. 13; and nothing in the Questions Presented before this Court raised any issue of viewpoint discrimination.
The ban on political payroll deductions is by its terms not limited to any particular type of political contribution. Nothing in the record suggests that public employers permit deductions for some political activities but not for those of unions. Idaho’s attorney general — charged with enforcing the ban — explicitly confirmed that it “applies to all organizations, to any *362 deduction regarding political issues, applies regardless of viewpoint or message, applies to all employers, and it does not single out any candidates or issues.” App. 110. If the ban is not enforced evenhandedly, plaintiffs are free to bring an as-applied challenge. See National Endowment for Arts v. Finley, 524 U. S. 569, 587 (1998).