**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2164
_____

JOHN DOE,
individually and on behalf of JANE DOE;
JANE DOE, a minor child, all fictitious names,

                                        Appellants

                    v.

LEFTERIS BANOS;
MICHAEL WILSON; ALAN FEGLEY;
HADDONFIELD BOARD OF EDUCATION;
JOHN DOES (1-10), Fictitious Defendants

On Appeal from the United States District Court
for the District of New Jersey
(No. 1-10-cv-01338)
District Judge:  Honorable Noel L. Hillman

Submitted Under Third Circuit LAR 34.1(a)
November 17, 2010

Before:  BARRY, CHAGARES, and VANASKIE, Circuit Judges.

(Filed November 30, 2010)

_____

OPINION
_____

CHAGARES, Circuit Judge.

"John Doe," individually and on behalf of his fifteen-year-old daughter, "Jane Doe,"[1] appeals from the District Court's denial of his motion for a preliminary injunction. For the reasons stated below, we will affirm.

I.

Because we solely write for the parties, we will only briefly summarize the essential facts.

The Haddonfield Board of Education, as part of an effort to "educate its students . . . in the process of making life choices, particularly in regard to . . . respecting and obeying the law and coping with the pressures of drug and alcohol in our society," has adopted a "comprehensive 24/7 Drug and Alcohol Policy." Appendix ("App.") at 46. The 24/7 Policy "is a 24 hours a day, 7 days a week, 365 days a year Policy that governs any underage drinking or drug use." App. 47. The policy, with limited exceptions, essentially bans students from any contact with drugs or alcohol. Students who violate the policy are subject to a series of escalating punishments.

In order for a Haddonfield student to participate in any extracurricular activity, including athletic teams, both the student and the student's parent must sign a "Student Activities Permission Form." This form requires the student to acknowledge that he or she understands that drug and alcohol use is prohibited at all times and that any violations will be punished according to the 24/7 Policy. The student's parent must also sign the

---

[1] To protect the identity of "Jane Doe," appellants are proceeding under pseudonyms. See Doe Br. at 6 n.3.

form.  Three statements on the Student Activities Permission Form pertain to the parent.
The first one provides that:

> I am willing that my child participate in any of the listed activities during his/her
> school year.  I am also willing that he/she take scheduled trips should he/she
> become a member of any activity.  When required, I will have him/her examined
> by our family physician.  I will not hold the Board of Education responsible for the
> payment of any bills incurred because of accidents or injuries to my child in
> his/her school activity(ies).

App.  62.  The second statement pertains to the interplay between the Board's insurance
policy and the family's insurance policy, and absolves the Board from any liability for
injury to a student in connection with an athletic extracurricular activity.   The final
statement reads as follows:  "I have received and read all the information regarding
student participation in the interscholastic/co-curricular activities.  I have also reviewed
the HSD Alcohol & Drug Regulations."  App. 62.

Jane Doe is a fifteen-year-old sophomore who wished to play lacrosse at
Haddonfield's public high school.  As required, the Does submitted a signed Student
Activities Permission Form, but John Doe modified the form by crossing out certain
language on the form that pertained to the 24/7 Policy.  See App. 91.  The Haddonfield
Board of Education informed Mr. Doe that the form, as modified, would not be accepted.
John Doe subsequently submitted an unmodified signed permission form, but
accompanied that form with a cover letter stating that he had "filled out the form under
duress."  App. 54.  After receiving this new form and letter, counsel for the Board of
Education expressed concern over the use of the term "under duress," and suggested that
Mr. Doe adopt the language "with full reservation of rights" instead.  App. 57.  John Doe

3

refused to modify his letter, asserting, through his counsel, that he "won't agree to be bound to a policy [he] believe[s] to be illegal." App. 96. The Board then informed Mr. Doe that the form he signed "under duress" was "invalid and unacceptable." App. 58. Acknowledging that John Doe "certainly [has] a right to disagree with the 24/7 Policy," the Board determined that Jane Doe would not be permitted to play lacrosse unless Mr. Doe "either unconditionally sign[s] a new permission form," "rescind[s] in writing [his previous] statement regarding signing the form under duress," or "amend[s] [his] correspondence to indicate 'with full reservation of rights.'" Id. Ultimately, John Doe refused these options, and the Board did not allow Jane Doe to participate on the lacrosse team.

The Does are challenging the validity of the 24/7 Policy in a separate lawsuit. In this action, John Doe alleges that "Defendants, through their actions in preventing Jane Doe from participating in extracurricular activities on account of what her father asserted in a letter to the school accompanying an unedited permission form, violated Plaintiff John Doe's right to freedom of speech and expression guaranteed under the First Amendment of the United States Constitution." App. 35.[2] Shortly after filing the complaint, John Doe moved for a preliminary injunction, seeking to enjoin the Board from excluding Jane Doe's participation on the school lacrosse team. The District Court denied the motion, and John Doe now appeals that decision.

---

[2] The complaint also states a claim for state-law negligence, which is not relevant on this appeal.

4

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We exercise jurisdiction over an interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1).

A party seeking a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure must satisfy the traditional four-factor test: (1) a likelihood of success on the merits; (2) irreparable harm if the injunction is denied; (3) that granting relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. See Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist., 386 F.3d 514, 524 (3d Cir. 2004). The "failure to establish any element . . . renders a preliminary injunction inappropriate." NutraSweet Co. v. Vit-Mar Enters., Inc., 176 F.3d 151, 153 (3d Cir. 1999). "Furthermore, when the preliminary injunction is directed not merely at preserving the status quo but, as in this case, at providing mandatory relief, the burden on the moving party is particularly heavy." Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980).

Ordinarily, when reviewing a preliminary injunction, "we review the court's legal conclusions de novo, its findings of fact for clear error, and its ultimate decision to grant or deny the preliminary injunction for an abuse of discretion." Maldonado v. Houstoun, 157 F.3d 179, 183 (3d Cir. 1998). "However, when First Amendment rights are implicated, this court must conduct an independent examination of the factual record as a whole." McTernan v. City of York, Pa., 577 F.3d 521, 526 (3d Cir. 2009).

As an initial matter, we note that this appeal does <u>not</u> require us to resolve whether it is valid for a school to adopt a disciplinary policy that governs student off-campus involvement with drugs and alcohol. The Does, as noted, raise this issue in a separate lawsuit. The only issue before this Court is whether John Doe's First Amendment rights were violated by the school's refusal to accept a Student Activities Permission Form accompanied by a letter stating that John Doe was signing the form "under duress."

In support of this claim, John Doe appears to alternate between two overlapping theories relying upon the First Amendment. On the one hand, he insists that this is a case involving "forced speech" or "an attempt to compel speech." Doe Br. at 22; Reply Br. at 2. On the other hand, John Doe argues that "[t]his is a clear case of the government censoring speech," and "that he is now faced with the choice between quietly criticizing a governmental policy or being pressured through the punishment of his daughter to retract his criticism." Doe Br. at 14, 18.

Both of these theories fail. In regard to the first theory, the only speech being "compelled" here is John Doe's unqualified signature on the Student Activities Permission Form, which, among other things, provides permission for Jane Doe to participate in lacrosse and acknowledges familiarity with the 24/7 Policy. Predicating student participation in extracurricular activities on a parent's unconditional consent to such a form does not infringe a parent's First Amendment rights. Put simply, the First Amendment does not protect a parent's right to sign a school permission form "under duress" while still mandating that the school allow his or her child to participate in the

underlying activity. A constitutional problem might exist, of course, if the parent's speech was otherwise restricted. John Doe's second theory seizes on this possibility, and argues that the Board here essentially "censored" his speech. We disagree. There is no evidence that John Doe's ability to criticize the 24/7 Policy has been inhibited in any manner whatsoever. As the District Court stated, the record reveals that "John Doe had and was continuously offered every opportunity to exercise his constitutional right to free speech." App. 15. Indeed, John Doe's signature on the Student Activities Permission Form neither required him to indicate that he agreed with the substance of the 24/7 Policy nor prevented him from criticizing the policy in any way.

The Board's decision to reject a Student Activities Permission Form purportedly signed "under duress" is subject only to rational basis review. Cf. Ysursa v. Pocatello Educ. Ass'n, 129 S. Ct. 1093, 1098 (2009). We share the District Court's view that John Doe has failed to meet the heavy burden of demonstrating that he is likely to succeed on the merits of his First Amendment claim under this level of scrutiny.[3] We therefore hold that the District Court did not abuse its discretion in denying the motion for a preliminary injunction.

IV.

For the foregoing reasons, we will affirm the denial of the motion for a preliminary injunction.

---

[3] We affirm on this point alone and decline to reach the other issues raised on this appeal.