[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11266

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 23, 2011
JOHN LEY
CLERK

D. C. Docket No. 5:11-cv-00761-CLS

ALABAMA EDUCATION ASSOCIATON,
an Alabama non-profit corporation,
A-VOTE,
an Alabama political committee,
PAM HILL,
JEFF BREECE,
CHASSITY SMITH, et al.,

                                        Plaintiffs-Appellees,

                    versus

STATE SUPERINTENDENT OF EDUCATION, STATE OF ALABAMA,
CHANCELLOR OF POSTSECONDARY EDUCATION, STATE OF
ALABAMA, ATTORNEY FOR LEE COUNTY, STATE OF ALABAMA,

                                        Defendants-Appellants.

_____

No. 11-11267

_____

D.C. Docket No. 5:11-cv-00761-CLS

ALABAMA EDUCATION ASSOCIATION,
an Alabama non-profit corporation,
A-VOTE,
an Alabama political committee,
PAM HILL,
JEFF BREECE,
CHASSITY SMITH, et al.,

Plaintiffs-Appellees,

versus

GOVERNOR OF ALABAMA AND PRESIDENT OF THE STATE SCHOOL
BOARD, DIRECTOR OF FINANCE, STATE OF ALABAMA,
COMPTROLLER, STATE OF ALABAMA,

Defendants-Appellants.

_____

No. 11-12609
_____

D.C. Docket No. 5:11-cv-01054-CLS

INTERNATIONAL ASSOCIATION OF FIREFIGHTERS,
an unincorporated labor organization,
FIREPAC,
a political action committee,
AMERICAN FEDERATION OF TEACHERS LOCAL 2115, et al.,

Plaintiffs-Appellees,

versus

SUPERINTENDENT OF EDUCATION,

2

in his capacity as the Superintendent of
Education of the State of Alabama,
STATE OF ALABAMA, CHANCELLOR OF POSTSECONDARY
EDUCATION, in her capacity as Chancellor of Postsecondary Education
of the State of Alabama, et al.,

                                       Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

(December 23, 2011)

Before DUBINA, Chief Judge, COX, Circuit Judge, and HUNT,[*] District Judge.

DUBINA, Chief Judge:

This appeal comes to us following the district court's entry of a preliminary injunction preventing enforcement of Alabama Act No. 2010-761 (the "Act"). This Act would prohibit a state or local government employee from arranging "by payroll deduction or otherwise" the payment of any contribution to an organization that uses any portion of those contributions for "political activity." The district court found that the statute impinges on important free speech rights protected by the First Amendment and that the Appellees—the Alabama Education

_____

[*]Honorable Willis B. Hunt, Jr., United States District Judge for the Northern District of Georgia, sitting by designation.

3

Association ("AEA") and other organizations—are likely to succeed in showing the Act is both overbroad in its restrictions and unduly vague as to what constitutes political activity. We conclude that the constitutional question before us turns upon a question of state law. Rather than speculating as to the meaning of a state statute, we believe it is more in keeping with the principles of federalism to offer the Alabama Supreme Court an opportunity to explicate the Act.

## I.

Alabama Code §§ 36-1-4.3 and 36-1-4.4 authorize public employees to request that the Alabama State Comptroller arrange for the payment of membership dues for employee organizations by payroll deduction. There is tension between this statute and Alabama Code § 17-17-5 which prohibits public employees from using government resources for any "political activities." An employee found in violation of § 17-17-5 is subject to prosecution for the crime of trading in public office, a Class A misdemeanor. In 2010, the Comptroller's Office reevaluated its interpretation of § 17-17-5 and changed its policy regarding salary deductions, thereafter declining to honor requests for deductions that benefited organizations involved in political activities, including AEA and its PAC, A-VOTE. Lawsuits followed and are still pending in the state courts.

4

After this policy change, in December 2010, Governor Riley called a special session of the legislature aimed at enacting ethics reform legislation. That special session amended § 17-17-5 to codify the position of the Comptroller's Office, forbidding state and local government employees from arranging "by salary deduction or otherwise for any payments to a political action committee or . . . for any payments for the dues of any person so employed to a membership organization which uses any portion of the dues for political activity." Ala. Code § 17-17-5(b)(1). The legislation limits political activity to the following seven categories:

a. Making contributions to or contracting with any entity which engages in any form of political communication, including communications which mention the name of a political candidate.
b. Engaging in or paying for public opinion polling.
c. Engaging in or paying for any form of political communication, including communications which mention the name of a political candidate.
d. Engaging in or paying for any type of political advertising in any medium.
e. Phone calling for any political purpose.
f. Distributing political literature of any type.
g. Providing any type of in-kind help or support to or for a political candidate.

*Id.* The Act further requires that any organization seeking "to arrange by salary deduction or otherwise . . . shall certify to the appropriate governmental entity that

5

none of the membership dues will be used for political activity." Ala. Code § 17-17-5(b)(2).

AEA collects a large percentage of its dues through salary deduction. AEA argues that these deductions are particularly important for its members who do not have checking accounts. In February 2011, AEA filed a complaint claiming that the Act unconstitutionally infringes on the First Amendment rights of AEA and its members. Two weeks after filing its complaint, AEA moved for a preliminary injunction barring enforcement of the Act on the grounds that it was likely to show that the Act was both unconstitutionally vague and overbroad. The district court agreed. In its opinion, the court reasoned that the "or otherwise" language of the statute reached beyond salary deductions to the personal political contributions of government employees. The district court also found that the term "political activity" was unduly vague.

## II.

We review a district court's grant of a preliminary injunction for an abuse of discretion. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1216 (11th Cir. 2008). The district court's findings of fact are reviewed under a clearly erroneous standard. *Id.* A finding of fact is clearly erroneous only when "although there is evidence to support it, the reviewing court on the entire

evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted). The district court's conclusions of law are reviewed *de novo*, "understanding that application of an improper legal standard . . . is never within a district court's discretion." *Id.* (internal quotation marks and brackets omitted).

III.

A. Certification of Questions to the Alabama Supreme Court.

There is no question that a properly conceived ban on salary deductions to organizations engaged in political activity would be constitutional. *See Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 355, 129 S. Ct. 1093, 1096 (2009) ("[N]othing in the First Amendment prevents a State from determining that its political subdivisions may not provide payroll deductions for political activities."). In *Ysursa*, public employee unions challenged an Idaho state law ban on political payroll deductions as a violation of the First Amendment. The Court began by reiterating that the First Amendment "protects the right to be free from government abridgment of speech. While in some contexts the government must accommodate expression, it is not required to assist others in funding the expression of particular ideas, including political ones." *Id.* at 358, 129 S. Ct. at 1098; *Regan v. Taxation with Representation of Wash.*, 461 U.S. 540, 549, 103 S.

7

Ct. 1997, 2003 (1983) ("[A] legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny."). The Court accepted that the unions challenging Idaho's law faced substantial difficulties in collecting funds for their political speech without the assistance of the state through salary deductions. However, this fact posed no difficulty for the Court, which concluded,

> While publicly administered payroll deductions for political purposes can enhance the unions' exercise of First Amendment rights, Idaho is under no obligation to aid the unions in their political activities. And the State's decision not to do so is not an abridgment of the unions' speech; they are free to engage in such speech as they see fit. They simply are barred from enlisting the State in support of that endeavor.

*Ysursa*, 555 U.S. at 359, 129 S. Ct. at 1098. The Court then held, "Idaho's decision to limit public employer payroll deductions as it has is not subject to strict scrutiny under the First Amendment." *Id.* (internal citations and quotation marks omitted). Instead, "[g]iven that the State has not infringed the unions' First Amendment rights, the State need only demonstrate a rational basis to justify the ban on political payroll deductions." *Id.* The Supreme Court concluded that the payroll deduction ban met the rational basis test. It wrote,

> The concern that political payroll deductions might be seen as involving public employers in politics arises only because Idaho permits public employer payroll deductions in the first place. . . . [T]he State's response to that problem is limited to its source—in this

8

case, political payroll deductions. The ban on such deductions plainly serves the State's interest in separating public employment from political activities.

*Id.* at 361, 129 S. Ct. at 1099.

Thus, the question before this court in the present case turns entirely on how the Act is interpreted. If it is meant only to reach payroll deductions for organizations engaged in electioneering activities such as those targeted by the Idaho statute at issue in *Ysursa*, then it presents no constitutional problems.[1] A statute with a broader reach may implicate First Amendment concerns not explored in *Ysursa*. It has long been our practice that "[s]ubstantial doubt about a question of state law upon which a particular case turns should be resolved by certifying the question to the state supreme court." *Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1268 (11th Cir. 2003) (citing *Moreno v. Nationwide Insur. Co.*, 105 F.3d 1358, 1360 (11th Cir. 1997)). There is a high likelihood that the Supreme Court of Alabama's interpretation of the Act will resolve this matter; therefore, the state courts should have the opportunity to address this issue in the first instance, particularly since it is one so closely tied to statewide political reforms. We

---

[1]The Idaho statute defines "political activity" as "electoral activities, independent expenditures, or expenditures made to any candidate, political party, political action committee or political issues committee or in support of or against any ballot measure." 555 U.S. 353 at 356, 129 S. Ct. at 1096.

9

conclude sufficient cause exists to certify a question to the Alabama Supreme Court with respect to the scope of the Act.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF ALABAMA PURSUANT TO RULE 18 OF THE ALABAMA RULES OF APPELLATE PROCEDURE.

TO THE SUPREME COURT OF ALABAMA AND THE HONORABLE JUSTICES THEREOF:

AEA contends that Alabama Act No. 2010-761 infringes a broader range of constitutionally protected activity than previously recognized as permissible under the First Amendment. Specifically, AEA argues that the Act's "or otherwise" language would prevent government employees from making contributions to an organization engaged in political activity through any means, including personal donations of their own money. AEA also argues that the term "political activity" reaches a wide number of ill-defined activities, making it impossible for any organization to certify that it is in compliance with the Act. The state counters that "or otherwise" simply prevents the use of state resources in any way—whether through salary deductions or some other state mechanism—from

10

benefitting organizations involved in political activities.  The state argues that "political activity" means electioneering activities.

The interpretation of the Act is a question of state law that has not been specifically addressed by the Alabama Supreme Court or the intermediate state appellate courts. Therefore, we certify the following questions to the Alabama Supreme Court:

> 1. Is the "or otherwise" language in the statute limited to the use of state mechanisms to support political organizations, or does it cover all contributions by state employees to political organizations, regardless of the source?
>
> 2. Does the term "political activity" refer only to electioneering activities?

The answers to these questions will permit this court to address AEA's concerns and determine whether the Act runs afoul of the First Amendment.  To facilitate the resolution of these questions, we direct the Clerk to transmit the entire record of this case, together with copies of the parties' briefs, to the Alabama Supreme Court.  Of course, the Alabama Supreme Court is in no way limited by our questions and may consider the case as it sees fit.

B.  Narrowing the District Court's Injunction.

Although the ultimate resolution of this matter may depend on the Alabama Supreme Court's resolution of the certified questions, we believe it is appropriate to narrow the district court's injunction in the interim. In its memorandum opinion, the district court issued a preliminary injunction barring the Act's enforcement *in toto*. However, a state's restriction on payroll deductions for organizations engaged in electioneering activities would likely be found constitutional under *Ysursa*. To the extent the state limits its enforcement of the Act in this way, it may proceed. The preliminary injunction remains in place as to enforcement that extends beyond that range of conduct. [2]

## IV.

For the foregoing reasons, we delay final judgment as to the preliminary injunction until the Alabama Supreme Court has had an opportunity to render its interpretation of the Act.

**QUESTIONS CERTIFIED.**

---

[2]We also DISMISS the Governor of Alabama as a party to this appeal because the district court's injunction did not apply to him.