**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

OKLAHOMA CORRECTIONS
PROFESSIONAL ASSOCIATION INC.,
a not for profit corporation;
DAVID RAMSEY, individually;
GLEN COLEMAN,

        Plaintiffs-Appellees,

v.

PRESTON DOERFLINGER, Finance
Secretary and Director, Oklahoma
Department of Human Services,

        Defendant-Appellant.

No. 12-6238
(D.C. No. 5:10-CV-01369-R)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **McKAY**, and **BALDOCK**, Circuit Judges.


The Oklahoma Corrections Professional Association Inc. and two of its

members (collectively, the OCPA), brought this 42 U.S.C. § 1983 action to challenge

two statutory conditions that together barred OCPA's participation in a voluntary

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

payroll-deduction program for public employees: participating organizations must consist solely of current public employees (exclusivity requirement) and have at least 2,000 members (numerosity requirement). OCPA filed suit against the Director of the Oklahoma Department of Human Services in his official capacity, seeking equitable and declaratory relief forestalling enforcement of these conditions as well as a preliminary injunction to block its imminent removal from the program. The Director moved for summary judgment on the merits. In a single order the district court denied the Director's motion and granted OCPA a preliminary injunction precluding the Director's enforcement of the numerosity requirement and reinstating OCPA in the program from which it had by then been removed. The Director now appeals from the grant of the preliminary injunction. Exercising jurisdiction under 28 U.S.C. § 1292(a)(1), we reverse for the reasons explained below.

**BACKGROUND, SCOPE OF APPEAL, AND DECISION UNDER REVIEW**

Oklahoma currently enables its employees to use voluntary payroll deductions (VPDs) to pay dues to "the Oklahoma Public Employees Association . . . or any other statewide association limited to state employee membership with a minimum membership of two thousand (2,000) dues-paying members." Okla. Stat. tit. 62, § 34.70(B)(5). The Director reads this provision to exempt the Oklahoma Public Employees Association (OPEA) from the exclusivity and numerosity conditions imposed on "any other statewide association." In addition, the statute grandfathers in "[a]ny statewide association granted a payroll deduction prior to January 1, 2008,"

*id.*, § 34.70(D), when the numerosity threshold was only 1,000 employees, *see id.*, § 7.10(B)(5) (2008).[1] This provision preserved participation in the VPD program by the Oklahoma State Troopers Association and the Communication Workers of America/State Employees, both of which have fewer than 2,000 members. But it does not apply to OCPA, which qualified for the VPD program in late 2009 and began participating in 2010, when its membership temporarily exceeded the 2,000-member threshold.

OCPA challenged the VPD program on three grounds: (1) the numerosity and exclusivity conditions precluding OCPA's use of the program burdened its ability to secure funding for political activities compared to associations allowed to participate, resulting in discrimination on speech in violation of the First Amendment; (2) the exclusivity condition restricting the makeup of OCPA's membership (but not that of the exempt OPEA) is a violation of OCPA's associational rights under the First Amendment; and (3) the operative legislative amendments to the VPD program were enacted in violation of the single-subject rule in Article 5, § 57 of the Oklahoma Constitution. The scope of this appeal, however, is more limited in light of the nature and basis for the preliminary injunction under review. The district court did not enjoin enforcement of the exclusivity condition, so the associational-rights claim triggered by that restriction is not before us. Nor is the state constitutional claim, over which the district court declined to exercise supplemental jurisdiction. The

_____

[1] The statute was renumbered from § 7.10 to § 34.70 in 2009.

- 3 -

preliminary injunction relates solely to the numerosity requirement and the alleged speech discrimination it effects.

The district court applied the traditional test for a preliminary injunction, requiring the movant to show "(1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).[2] The district court did not directly assess the first factor, but tacitly relied on its preceding analysis of the Director's summary judgment motion on the merits.

---

[2]    The district court correctly left this test unmodified by collateral rules we have developed to heighten or relax the movant's burden under certain circumstances. In particular, the district court properly deemed this a case of preserving rather than disturbing the status quo, so that critical consideration did not require enhancement of the standard. *See generally O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004) (en banc) ("[A] movant seeking a preliminary injunction which upsets the status quo must satisfy a heightened burden"), *aff'd and remanded*, 546 U.S. 418 (2006). "An injunction disturbs the status quo when it changes the last peaceable uncontested status existing between the parties before the dispute developed." *Beltronics*, 562 F.3d at 1070-71 (internal quotation marks omitted). When the present dispute developed, OCPA had been an ongoing participant in the VPD program since early 2010, although it was terminated from the program before its motion for preliminary injunction was finally resolved. Thus, the injunction at issue simply returned the parties to the pre-litigation status quo. On the other hand, OCPA concedes it is not entitled to any relaxation of the preliminary injunction standard, because it is seeking to enjoin governmental action taken pursuant to a statutory scheme. *See Aid for Women v. Foulston*, 441 F.3d 1101, 1115 (10th Cir. 2006).

It began that analysis by acknowledging "[t]he First Amendment prohibits government from *abridging* the freedom of speech; it does not confer an *affirmative right* to use government payroll mechanisms for the purpose of obtaining funds for expression." *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 129 S. Ct. 1093, 1096 (2009) (emphasis added and internal quotation marks omitted). *Ysursa* held a ban on payroll deductions for union political action committees did not infringe First Amendment rights and hence was not subject to strict scrutiny. 129 S. Ct. at 1098. But the district court noted the ban in *Ysursa* was applied evenhandedly to all unions, *see id.* at 1099 n.3, while selective restrictions on speech implicate heightened scrutiny under the First Amendment, *see, e.g.*, *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2663-64 (2011); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 130 S. Ct. 876, 898-99 (2010); *Randall v. Sorrell*, 548 U.S. 230, 246-47 (2006). As discussed above, Oklahoma's VPD program is selectively denied to public-employee associations based on size of membership. While it is true this numerosity requirement generally applies to all associations, some are exempted by a grandfather provision and OPEA is favored with its own particularized exemption. The district court consequently held the program was subject to heightened scrutiny, which the court went on to conclude was not satisfied by the justifications offered by the Director for the numerosity requirement.[3]

---

[3] The district court did not decide whether the appropriate level of scrutiny was strict scrutiny—requiring a law to be "narrowly tailored" to achieve a "compelling

(continued)

- 5 -

The district court's assessment of the other injunction factors followed largely from this conclusion. The court found irreparable harm based on the presumption of such harm when First Amendment rights have been infringed, *see Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235-36 (10th Cir. 2005), bolstered by evidence submitted by OCPA regarding the vital role VPDs play in raising association funds. As for harm to the State, the court found the administrative burden of reinstating the VPD program for OCPA would be *de minimus* and noted the Director had not offered any evidence of other damage the injunction would occasion. Finally, the court concluded the injunction would not be adverse to the public interest, particularly as "it is always in the public interest to prevent the violation of a party's constitutional rights." *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (internal quotation marks omitted).

## ANALYSIS

The merit of OCPA's challenge to the numerosity requirement is the lynchpin of this appeal. And the crux of that inquiry is the presence *vel non* of a cognizable First Amendment interest and the attendant level of scrutiny applied to the legislative

---

interest"—applied in *Citizens United* to a ban on corporate expenditures for political speech, 130 S. Ct. at 898 (internal quotation marks omitted), or the somewhat laxer exacting scrutiny—requiring a law to be "closely drawn" to achieve a "sufficiently important interest"—applied in *Randall* to limits on political campaign contributions, 548 U.S. at 247-48, or the intermediate scrutiny—requiring a law to be "drawn to achieve" a "substantial government interest"—applied in *Sorrell* to restrictions on commercial speech, 131 S. Ct. at 2667-68. The court concluded the VPD program could not be justified under any of these heightened standards.

judgment behind the requirement, i.e., if "the State has not infringed [OCPA's] First Amendment rights, the State need only demonstrate a rational basis to justify the ban on [association] payroll deductions," *Ysursa*, 129 S. Ct. at 1098.

The district court recognized the First Amendment inquiry is affected but not controlled by *Ysursa*'s holding that a VPD program is effectively a subsidy for participants' activities (including speech), which the State has no constitutional obligation to provide. In doing so, the court drew a salient distinction between VPD benefits evenhandedly and selectively bestowed, citing precedent applying heightened scrutiny to laws discriminately affecting speech. But there is a second distinction—between differential treatment of *speakers* and discrimination based on *viewpoint*—which moderates the force of the first in the context of speech subsidies. That is, while viewpoint discrimination always implicates First Amendment constraints, "*speaker*-based distinctions are permissible when the state *subsidizes* speech." *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 646 (7th Cir. 2013) (emphasis added). As the Seventh Circuit explained in upholding a VPD program much like the program at issue here:

> Nothing in the Constitution requires the government to subsidize all speech equally. A government subsidy "that discriminates among speakers does not implicate the First Amendment unless it discriminates on the basis of ideas." *Leathers v. Medlock*, 499 U.S. 439, 450 (1991); *see also Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 557-58 (1998) . . . . As *Regan* [*v. Taxation with Representation of Wash.*, 461 U.S. 540 (1983)] explained, legislative "selection of particular entities or persons for entitlement to this sort of largesse is obviously a matter of policy and discretion not [ordinarily] open to judicial review[.]" 461 U.S. at 549 (internal quotations omitted). Indeed, the

speech subsidy upheld in *Regan* discriminated on the basis of speaker—veterans' groups who engaged in lobbying could claim [tax exempt] status but other lobbying groups could not. *Id.* at 548-49; *see also* [*S. C. Educ. Ass'n v.*] *Campbell*, 883 F.2d [1251,] 1255-56 [4th Cir. (1989)] (no First Amendment implications to statute that discriminated on the basis of speaker in authorizing payroll deductions for some public employee organizations but not others). Thus, that the state gave one category of public employees the benefit of payroll dues deduction does not run afoul of the First Amendment.

*Id.* at 646-47 (parallel citations omitted) (third and fourth alterations in original).

The particular combination of differential treatment based on speaker (as opposed to viewpoint) in connection with a subsidy for (as opposed to burden on) speech activities was not considered by the district court. The Supreme Court decisions it cited for heightened scrutiny involved burdens on speech,[4] which of course trigger such scrutiny—in pointed contrast to the *Regan* decision relied on by *Walker*, which upheld a speech subsidy by applying rational-basis scrutiny.[5] And, of course,

---

[4]     *Citizens United* involved a law prohibiting expenditures for political speech, *see* 130 S. Ct. at 886, *Randall* addressed a law limiting campaign contributions, 548 U.S. at 236, 247-48, and *Sorrell* concerned a law restricting commercial speech, 131 S. Ct. at 2663-64.

[5]     *Regan* upheld a law selectively subsidizing political speech by veterans organizations, whose tax-exempt status was preserved even if they engaged in lobbying efforts that would disqualify other charitable organizations. 461 U.S. at 542, 550. The Court noted the permissibility of selective subsidies is "scarcely [a] novel principle[]. We have held in several contexts that a legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny," even if the subsidy is not uniformly denied. *Id.* at 549 (discussing cases rejecting constitutional challenges to other selective subsidies); *see also United States v. Am. Library Ass'n*, 539 U.S. 194, 212 (2003) (quoting *Regan* and upholding law subsidizing provision of filtered internet access but not unfiltered internet access to library patrons); *Lyng v. Int'l Union, UAW*, 485 U.S. 360, 368 (1988) (quoting *Regan* and upholding Congress' refusal to extend food

(continued)

- 8 -

"*Ysursa* requires us to analyze [VPD programs] under First Amendment cases involving speech subsidies." *Walker*, 705 F.3d at 648.

We find *Walker*, which is the only recent circuit case addressing a similar VPD program,[6] to be well-reasoned and persuasive on this point. The contrary district court cases relied on by the district court here fail to consider the role of the speaker/viewpoint distinction in the context of a speech subsidy.[7] We follow *Walker*'s guidance in this critical respect.

That is not, however, the end of the First Amendment inquiry. For one thing, the speaker/viewpoint distinction may as a practical matter be illusory: "Speech restrictions based on the identity of the speaker are all too often simply a means to control content." *Citizens United*, 130 S. Ct. at 899; *cf. Walker*, 705 F.3d at 649-52 (considering, but rejecting on the facts, contention that selectivity in allowing public-safety employees' union access to VPD program was façade for viewpoint

stamp benefits to workers who have lost income by striking, notwithstanding the undeniable effect on associational rights involved).

[6] The Fourth Circuit's *Campbell* decision cited in the passage from *Walker* quoted above, as well as the Sixth Circuit's decision in *Brown v. Alexander*, 718 F.2d 1417, 1421-23 (6th Cir. 1983), also held somewhat similar VPD programs did not violate the First Amendment rights of associations not allowed to participate, but *Walker*'s thorough and contemporary discussion of the constitutional issues draws our particular reliance.

[7] Actually, one of the cases—the district court decision reversed by the Seventh Circuit in *Walker*—did acknowledge this distinction and held it negated heightened First Amendment scrutiny, but went on to invalidate the VPD program under rational basis review. *See Wis. Educ. Ass'n Council v. Walker*, 824 F. Supp. 2d 856, 874-76 (W.D. Wis. 2012), *aff'd in part*, *rev'd in part*, 705 F.3d 640 (7th Cir. 2013).

discrimination). There is no indication of this in connection with the numerosity requirement itself, which appears to be a facially neutral criterion—though given the failure of the parties and district court to focus on the speaker/viewpoint distinction, there may be evidence or argument on this point thus far not fairly aired. The same is true of the grandfather exemption from the numerosity requirement. And while the singular exemption granted specifically to OPEA is potentially more problematic, viewpoint-discrimination-by-proxy has not been adequately explored in this regard either. Thus, while we reverse the preliminary injunction improperly granted on the basis of speaker selectivity alone, we do not foreclose the possibility of OCPA justifying injunctive relief on the basis of viewpoint discrimination.

Furthermore, even if heightened scrutiny does not apply, the numerosity requirement of the VPD program could be invalidated under rational-basis scrutiny. But for that to happen, OCPA must satisfy a heavy burden: OCPA must "negative any reasonably conceivable state of facts that could provide a rational basis for the [selective] classification" effected by the challenged statute. *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 730 (10th Cir. 2011) (internal quotation marks omitted). The district court has not addressed this question. Rather, it concluded that (1) *the Director* had not *shown* the numerosity requirement of the VPD program was (2) supported by state *interests substantial enough* to satisfy heightened scrutiny and (3) *drawn to achieve* such interests in a manner commensurate with such scrutiny. Aplt. App. at 832-33. All three points differentiate the district court's analysis from

- 10 -

that directed by rational-basis scrutiny.  We do not preemptively gainsay the possibility of a successful rational-basis challenge to the VPD program, but an affirmance of the existing injunction on this basis would be inappropriate.  We leave any further development of this potential rationale for injunctive relief to the district court.

The preliminary injunction issued by the district court is reversed.

Entered for the Court

Terrence L. O'Brien
Circuit Judge