KETHLEDGE, J., delivered the opinion of the court in which GIBBONS, J., joined. STRANCH, J. (pp. 961-69), delivered a separate dissenting opinion.
OPINION
KETHLEDGE, Circuit Judge.
This case presents the question whether the federal Constitution compels Michigan’s public schools to collect membership dues for unions that represent public-school employees. Enacted in 2012, Michi *958 gan’s Public Act 53 provides: “A public school employer’s use of public school resources to assist a labor organization in collecting dues or service fees from wages of public school employees is a prohibited contribution to the administration of a labor organization.” Thus, under the Act, unions must collect their own membership dues from public-school employees, rather than have the schools collect those dues for them via payroll deductions. The Act does not bar public employers other than schools from collecting membership dues for unions who represent their employees.
The plaintiffs here are a number of unions and union members who think that Public Act 53 violates their rights under the First Amendment and the Equal Protection Clause. The district ■ court was inclined to agree with them, and thus entered a preliminary injunction barring enforcement of the Act. The State appealed.
We measure the validity of the district court’s injunction by reference to four criteria:
(1) whether the movant has a strong likelihood of success on the merits; [ (2).] whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction.
Hunter v. Hamilton Cnty. Bd. of Elections, 635 F.3d 219, 233 (6th Cir.2011). “When a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits will often be the determinative factor.” Obama for Am. v. Husted, 697 F.3d 423, 436 (6th Cir.2012) (internal quotation marks omitted). The likelihood-of-success factor is determinative here; and because that factor presents a question of law, we review the district court’s application of it de novo. See Bays v. City of Fairborn, 668 F.3d 814, 819 (6th Cir.2012).
The plaintiffs challenge Public Act 53 facially rather than as applied, which means “they confront a heavy burden in advancing their claim.” Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 580, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998) (internal quotation marks omitted). The theory behind their First Amendment claim runs as follows: unions engage in speech (among many other activities); they need membership dues to engage in speech; if the public schools do not collect the unions’ membership dues for them, the unions will have a hard time collecting the dues themselves; and thus Public Act 53 violates the unions’ right to free speech.
The problem with this theory is that the Supreme Court has already rejected it. . “The First Amendment prohibits government from ‘abridging the freedom of speech’; it does not confer an affirmative right to use government payroll mechanisms for the purpose of obtaining funds for expression.” Ysursa v. Pocatello Educ. Ass’n, 555 U.S. 353, 355, 129 S.Ct. 1093, 172 L.Ed.2d 770 (2009). Here, Public Act 53 does not restrict the unions’ speech at all: they remain free to speak about whatever they wish. Moreover, “nothing in the'First Amendment prevents a State from determining that its political subdivisions may not provide payroll deductions” for union activities, id.; and payroll deductions are all that Public Act 53 denies the unions here. Seldom is precedent more binding than Ysursa is in this case.
But the plaintiffs try to circumvent Ysursa in two ways. First, citing the Court’s decision in Cornelius v. NAACP Legal Defense & Educational Fund, Inc., 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985), the plaintiffs say that the *959 schools’ payroll-deduction process is a “nonpublic forum,” from which the unions cannot be excluded. But forums, real or virtual, are places where “some form of communicative activity occurs.” Perry Educ. Ass’n v. Perry Local Educators’ Ass’n, 460 U.S. 37, 44, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). And not even the plaintiffs allege that a payroll deduction— the ministerial act of deducting a particular sum from an employee’s paycheck — is itself expressive activity. The administrative process in which that deduction occurs, therefore, is not a forum of any kind. Compare Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg’l Transp., 698 F.3d 885, 892 (6th Cir.2012) (advertisement space on a city bus was a nonpublic forum).
Cornelius only illustrates what is missing from this case. Cornelius involved a challenge to the exclusion of certain groups from the federal government’s Combined Federal Campaign, through which nonprofit groups solicited donations from federal employees. Groups participating in the Campaign were allowed to disseminate 30-word written statements about their cause. If an employee decided to donate through the Campaign, the donation could be made through a lump-sum payment or through payroll deductions. But nobody in Cornelius argued that the payroll deductions were speech; the issue was whether the 30-word solicitations were. See 473 U.S. at 797, 105 S.Ct. 3439. Indeed, the Court said at the outset of its analysis that, if the 30-word solicitations were not speech, “we need go no further.” Id. at 797, 105 S.Ct. 3439. Ysursa makes clear that payroll deductions are not speech, so we need go no further with the argument here. (That Public Act 53 does not restrict speech distinguishes this case from every one of the cases relied upon by the dissent.)
The plaintiffs also assert that Public Act 53 is viewpoint-discriminatory in a way that the statute in Ysursa was not. There, the challenged statute applied to unions across the board, whereas here, the plaintiffs say, Public Act 53 applies only to unions that represent public-school employees. But there are several problems with this argument. The first — even if one assumes that viewpoint discrimination would be problematic with respect to payroll deductions — is that Public Act 53 by its terms does not discriminate based upon viewpoint. It does not, for example, grant certain unions access to the payroll-deduction process, and deny access to others, based upon whether a union supports or opposes a particular policy position. To the contrary, the Act says nothing about speech of any kind. The Act is therefore facially neutral as to viewpoint, which goes a long ways towards defeating the plaintiffs’ facial challenge. Accord Wis. Educ. Ass’n Council v. Walker, 705 F.3d 640, 648 (7th Cir.2013).
The plaintiffs respond that the Act denies access to the payroll — deduction process based upon who the speaker is — i.e., it denies access to certain unions — which the plaintiffs say is a proxy for viewpoint discrimination. But again the contention is belied by the Act’s terms. The Act does not deny payroll-access to particular unions. (Quite the contrary: the State almost certainly continues to collect membership dues for a number of the plaintiff-unions here — e.g., local chapters of AFSCME and the Service Employees International Union — albeit from employees in agencies other than public schools.) Instead, Public Act 53 bars public-school employers from using their resources to collect membership dues on behalf of any union. The particular union to which an employee belongs, therefore, is irrelevant to whether a public employer can collect the employee’s membership dues. What *960 matters, instead, is who the employer is. And thus — even- if one accepts the plaintiffs’ speaker — as-proxy-for-viewpoint theory — the Act-is as neutral to speaker identity as it is to viewpoint.
What the plaintiffs are left with, then, is an argument that we should look past the Act’s facial neutrality as to viewpoint and union identity, and conclude nonetheless' that the Act’s real purpose is to suppress speech by teachers’ unions. But the law forecloses this kind of adventure. In another speech case, the Supreme Court said: “It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive.” United States v. O’Brien, 391 U.S. 367, 383, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). That principle binds us here; and thus, like the Seventh Circuit in a virtually identical case, we will not “peer[ ] past” the text of Public Act 53 “to infer some invidious legislative intention.” Walker, 705 F.3d at 649-50.
So Public Act 53 does not restrict speech; it does not discriminate against or even mention viewpoint; and it has nothing to do with a forum of any kind. Instead, the Act merely directs one kind of public employer to use its resources for its core mission rather than for the collection of union dues. That is not a First Amendment concern. See Regan v. Taxation With Representation of Washington, 461 U.S. 540, 546, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1981) (“We again reject the notion that First Amendment rights are somehow not fully realized unless they are subsidized by the State”) (internal quotation marks omitted).
Only the plaintiffs’ equal-protection claim remains. “[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity.” Heller v. Doe, 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). Such a classification is constitutional “so long as it bears a rational relation to some legitimate end.” Vacco v. Quill, 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997) (internal quotation marks omitted). This test is highly deferential: “any conceivable legitimate governmental interest will do; and even then it' is constitutionally irrelevant whether the conceivable interest actually underlay the enactment of the challenged provision.” Fednav, Ltd. v. Chester, 547 F.3d 607, 624-25 (6th Cir.2008) (emphasis in original) (citations, brackets, and internal quotation marks omitted).
The applicability of rational-basis review is a strong signal that the issue is one for resolution by the democratic process rather than by the courts. This case is no exception. Public Act 53 proscribes the “use of public school resources” for collection of union dues, but does not bar other state or local employers from using their resources for that same purpose. See Mich. Comp. Laws § 423.210(l)(b). The question here is whether there is any conceivable legitimate interest in support of this classification. We hold that there is: the Legislature could have concluded that it is more important for the public schools to conserve their limited resources for their core mission than it is for other state and local employers. The plaintiffs’ equal-protection claim therefore fails.
We hold that the plaintiffs’ claims under the First Amendment and the Equal Protection Clause aré both without merit. The plaintiffs therefore have no chance of success on those claims, which means the injunction should not have issued.
The district court’s June 11, 2012 order granting the plaintiffs’ motion for a preliminary injunction is reversed, and the case *961 remanded for further proceedings consistent with this opinion.