# IN THE SUPREME COURT OF IOWA

No. 17–1834

Filed May 17, 2019

**IOWA STATE EDUCATION ASSOCIATION**
and **DAVENPORT EDUCATION ASSOCIATION,**

Appellants,

vs.

**STATE OF IOWA, IOWA PUBLIC EMPLOYMENT RELATIONS BOARD, MIKE CORMACK, JAMIE VAN FOSSEN,** and **MARY GANNON,**

Appellees.

---

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

Unions representing public school employees appeal summary judgment dismissing their constitutional challenges to 2017 amendments to the Public Employment Relations Act. **AFFIRMED.**

Alice O'Brien and Lubna A. Alam of the National Education Association, Washington, D.C.; Becky S. Knutson of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines; and Jeremiah A. Collins of Bredhoff & Kaiser P.L.L.C., Washington, D.C., for appellants.

Matthew C. McDermott, Michael R. Reck, Kelsey J. Knowles, and Espnola F. Cartmill of Belin McCormick, P.C., Des Moines, for appellees.

Jay M. Smith of Smith & McElwain Law Office, Sioux City, for amici curiae Iowa Federation of Labor, AFL-CIO; Communications

Workers of America; and International Union of Operating Engineers, Local 234.

Adam D. Zenor of Grefe & Sidney, P.L.C., Des Moines, and Frank D. Garrison of National Right to Work Legal Defense Foundation, Springfield, Virginia, for amicus curiae Kevin Rohne.

**WATERMAN, Justice.**

This appeal, submitted with *AFSCME Iowa Council 61 v. State*, ___ N.W.2d ___ (Iowa 2019), also filed today, presents constitutional challenges to the 2017 amendments to Iowa Code chapter 20, the Public Employment Relations Act (PERA). The amendments ended payroll deductions for union dues and narrowed the scope of mandatory collective bargaining topics for bargaining units comprised of less than thirty percent "public safety employees," defined to include most police officers and firefighters but not prison guards, campus police officers, and emergency medical technicians. The new classifications result in many public employees losing significant statutory bargaining rights compared to other public employees with arguably similar jobs. Two unions representing public school employees filed this action seeking injunctive and declaratory relief against the State of Iowa, the Iowa Public Employment Relations Board (PERB), and three PERB board members. The plaintiffs allege the 2017 amendments violate the equal protection clause of the Iowa Constitution. The district court granted the defendants' motion for summary judgment dismissing the action, and we retained the plaintiffs' appeal.

Our role is to decide whether constitutional lines were crossed, not to sit as a superlegislature rethinking policy choices of the elected branches. We conclude the 2017 amendments withstand the constitutional challenges. The parties agree the equal protection claims are reviewed under the deferential rational basis test. As more fully explained in *AFSCME Iowa Council 61*, the legislature could reasonably conclude that the goal of keeping labor peace with unions comprised of at least thirty percent public safety employees, and the greater risks faced by police and firefighters, justified the classification. We hold the

legislative classifications are not so overinclusive or underinclusive as to be unconstitutional under our court's rational basis test. For the reasons explained below, we also reject the plaintiffs' equal protection challenge to the prohibition on payroll deductions for union dues. Accordingly, we affirm the district court's summary judgment in favor of the defendants.

## I. Background Facts and Proceedings.

In this case, we consider another challenge to House File 291 amending PERA, Iowa's collective bargaining statute, Iowa Code chapter 20. We discuss chapter 20 and House File 291's 2017 amendments in *AFSCME Iowa Council 61*, ___ N.W.2d at ___, and do not repeat that discussion here.

The plaintiffs in this case, the Iowa State Education Association (ISEA) and the Davenport Education Association (DEA), are unions representing public school employees. The ISEA represents more than 30,000 members throughout the state, most of whom are public school teachers. The ISEA has 400 local associations that negotiate collective bargaining agreements with school districts in Iowa. The DEA represents the professional staff working for the Davenport Community School District. PERB has certified the DEA as the exclusive bargaining agent to represent those employees. The employees represented by the ISEA and the DEA are not "public safety employees" as defined in the 2017 amendments.

In April 2017, the ISEA and the DEA filed this civil action for declaratory and injunctive relief, alleging House File 291 violated article I, section 6 of the Iowa Constitution by denying equal treatment to the

unions and the employees they represent.[1]  The defendants, the State of Iowa; PERB; PERB's chairperson, Mike Cormack; and PERB board members Jamie Van Fossen and Mary Gannon, filed an answer and affirmative defenses.  The parties filed cross-motions for summary judgment.

The district court concluded that House File 291 passed rational basis scrutiny without violating article I, section 6 of the Iowa Constitution and, therefore, granted summary judgment in favor of the defendants.  As to the differentiation between public safety employees and all other public employees, the district court concluded that the legislature gave public safety employees greater bargaining rights because of the potential risk to public safety if these employees went on strike and because, if other public employees went on strike, it would fall on public safety employees to enforce the law in the ensuing labor unrest.  Because the district court relied on the strike-avoidance rationale, the court did not consider the State's other proffered rationale that the differentiation was also rationally based on the unique safety issues public safety employees face requiring expansive bargaining rights on topics like health insurance.  As to payroll deductions, the district court accepted the fiscal responsibility goal advanced by the State, reasoning that the legislature could conclude "that collective bargaining is expensive, disruptive and not in the best interest of citizens" and there was no constitutional requirement to continue payroll deductions for union dues merely because payroll deductions for other organizations were permitted.

---

[1]The ISEA and the DEA also raised a due process challenge to House File 291's amendments to the bargaining representative certification and retention process, but they have chosen not to pursue this challenge on appeal.

The ISEA and the DEA appealed, and we retained their appeal.

## II. Scope of Review.

"We review summary judgment rulings for correction of errors at law." *Baker v. City of Iowa City*, 867 N.W.2d 44, 51 (Iowa 2015). "We view the entire record in the light most favorable to the nonmoving party, making every legitimate inference that the evidence in the record will support in favor of the nonmoving party." *Bass v. J.C. Penney Co.*, 880 N.W.2d 751, 755 (Iowa 2016).

We review constitutional claims de novo. *State v. Groves*, 742 N.W.2d 90, 92 (Iowa 2007). Our standard of review with regard to constitutional challenges to statutes is well established,

> We review constitutional challenges to a statute de novo. In doing so, we must remember that statutes are cloaked with a presumption of constitutionality. The challenger bears a heavy burden, because it must prove the unconstitutionality beyond a reasonable doubt. Moreover, "the challenger must refute every reasonable basis upon which the statute could be found to be constitutional." Furthermore, if the statute is capable of being construed in more than one manner, one of which is constitutional, we must adopt that construction.

*State v. Seering*, 701 N.W.2d 655, 661 (Iowa 2005) (quoting *State v. Hernandez-Lopez*, 639 N.W.2d 226, 233 (Iowa 2002)), *superseded by statute on other grounds*, 2009 Iowa Acts ch. 119, § 3 (codified at Iowa Code § 692A.103 (Supp. 2009)), *as recognized in In re T.H.*, 913 N.W.2d 578, 588 (Iowa 2018).

## III. Analysis.

The ISEA and the DEA make two constitutional challenges to House File 291. First, the plaintiffs argue that House File 291's two-class scheme of collective bargaining violates article I, section 6 of the Iowa Constitution. We address and reject this argument in the companion case filed today. *AFSCME Iowa Council 61*, ___ N.W.2d at ___.

In *AFSCME,* we concluded that the two-class bargaining scheme withstood rational basis scrutiny. *Id.* We reach the same conclusion in this case, without repeating that analysis. *See id.* We now address the plaintiffs' equal protection challenge to the payroll deduction prohibition.

House File 291 prohibits public employers from administering payroll deductions for union dues and prohibits collective bargaining over payroll deductions for union dues. 2017 Iowa Acts ch. 2, §§ 6, 22 (codified at Iowa Code § 20.9 and § 70A.19 (2018)). The plaintiffs argue these prohibitions violate article I, section 6, the equal protection clause of the Iowa Constitution, which provides, "All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens." Iowa Const. art. I, § 6.

Iowa's equal protection clause "is essentially a direction that all persons similarly situated should be treated alike." *Varnum v. Brien*, 763 N.W.2d 862, 878–79 (Iowa 2009) (quoting *Racing Ass'n of Cent. Iowa v. Fitzgerald* (*RACI*), 675 N.W.2d 1, 7 (Iowa 2004)).

The plaintiffs concede that the elimination of payroll deductions for union dues does not infringe on their First Amendment rights. *See, e.g., Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 359, 129 S. Ct. 1093, 1098 (2009) ("While publicly administered payroll deductions for political purposes can enhance the unions' exercise of First Amendment rights, Idaho is under no obligation to aid the unions in their political activities. And the State's decision not to do so is not an abridgment of the unions' speech; they are free to engage in such speech as they see fit. They simply are barred from enlisting the State in support of that endeavor."); *In re Hubbard,* 803 F.3d 1298, 1313 (11th Cir. 2015) (noting every

federal circuit to address the issue has rejected First Amendment challenges to "legislation eliminating state-sponsored collection of union dues through payroll deductions"). The plaintiffs' challenge to the payroll deduction prohibition does not implicate a fundamental right, and therefore, we apply a rational basis review.

"The rational basis test is a 'very deferential standard.'" *NextEra Energy Res. LLC v. Iowa Utils. Bd.*, 815 N.W.2d 30, 46 (Iowa 2012) (quoting *Varnum*, 763 N.W.2d at 879–80). Plaintiffs bear "the heavy burden of showing the statute unconstitutional and must negate every reasonable basis upon which the classification may be sustained." *Id.* (quoting *Bierkamp v. Rogers*, 293 N.W.2d 577, 579 (Iowa 1980)). As we recently reiterated in unanimously rejecting a federal equal protection challenge, courts have only a limited role in rational basis review.

> We many times have said, and but weeks ago repeated, that rational-basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." Nor does it authorize "the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. Further, a legislature that creates these categories need not "actually articulate at any time the purpose or rationale supporting its classification." Instead, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."
>
> A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification. "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." A statute is presumed constitutional and "[t]he burden is on

the one attacking the legislative arrangement to negative every conceivable basis which might support it," whether or not the basis has a foundation in the record. Finally, courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it "is not made with mathematical nicety or because in practice it results in some inequality." "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific."

*Baker*, 867 N.W.2d at 57 (alterations in original) (quoting *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 319–21, 113 S. Ct. 2637, 2642–43 (1993)).

Our role is similarly limited under the Iowa Constitution. *See Qwest Corp. v. Iowa State Bd. of Tax Review*, 829 N.W.2d 550, 560 (Iowa 2013) ("[In *RACI*,] we made clear that actual proof of an asserted justification was not necessary, but the court would not simply accept it at face value and would examine it to determine whether it was credible as opposed to specious."); *King v. State*, 818 N.W.2d 1, 30 (Iowa 2012) ("*RACI* has not been the death knell for traditional rational basis review. Since *RACI* was decided, we have continued to uphold legislative classifications based on judgments the legislature could have made, without requiring evidence or 'proof' in either a traditional or nontraditional sense.").

We use a three-part rational basis analysis when reviewing challenges to a statute under article I, section 6 of the Iowa Constitution. "First, we must determine whether there was a valid, 'realistically conceivable' purpose that served a legitimate government interest." *Residential & Agric. Advisory Comm., LLC v. Dyersville City Council*, 888 N.W.2d 24, 50 (Iowa 2016) (quoting *McQuistion v. City of Clinton*, 872 N.W.2d 817, 831 (Iowa 2015)). "Next, the court must evaluate whether the 'reason has a basis in fact.'" *McQuistion*, 872 N.W.2d at 831

(quoting *RACI*, 675 N.W.2d at 7–8). Third, "we evaluate whether the relationship between the classification and the purpose for the classification 'is so weak that the classification must be viewed as arbitrary.'" *Residential & Agric. Advisory Comm., LLC*, 888 N.W.2d at 50 (quoting *McQuistion*, 872 N.W.2d at 831).

The plaintiffs argue that there is no realistically conceivable purpose for prohibiting the payroll deduction for union dues while still allowing payroll deductions for dues or contributions to other organizations. The plaintiffs contend administering payroll deductions imposes no burden on public employers who actually incur greater costs removing the deductions from their payroll systems. For that reason, the plaintiffs argue the payroll deduction prohibition cannot be supported on the stated objective of fiscal responsibility. The plaintiffs argue that the purpose of PERA supports allowing payroll deductions for union dues. *See* Iowa Code § 20.1(1) (stating that the statute's purpose is "to promote harmonious and cooperative relationships between government and its employees by permitting public employees to organize and bargain collectively"). According to the plaintiffs, the real reason for House File 291 is to starve unions of dues to curtail their ability to collectively bargain for public employees, and without any other realistically conceivable purpose, House File 291 cannot withstand rational basis scrutiny.[2]

Amicus, AFL-CIO, argue that payroll deductions were often of little consequence to employers and most employers readily agreed to these provisions. Amicus argue that this is because joining a union is voluntary, as was electing to have dues deducted from your paycheck,

_____

[2]The record does not show whether the unions lost revenue or members as a result of the prohibition on payroll deductions for union dues.

and employers were not required to pay an agency fee. Ultimately, the system allowed the employee the ability to direct where his or her money went. AFL-CIO argues that House File 291 is unconstitutional because it continues to allow employees to direct their wages to nonunion entities and activities while singling out unions, even if the employee has authorized the payroll deduction for his or her union dues. The purpose of the amendments, amicus argue, is to cripple the ability of employees to choose union representatives to advocate on their behalf.

The plaintiffs concede, as they must, that the State is not constitutionally required to provide payroll deductions at all. Rather, the plaintiffs contend that once the State allows voluntary payroll deductions for charitable contributions or dues for other professional organizations, the equal protection clause requires the State to also allow payroll deductions for union dues. Yet the plaintiffs and their amicus cite no decisions holding it is unconstitutional to disallow voluntary payroll deductions for union dues while allowing deductions for other organizations. To the contrary, the United States Supreme Court and other appellate courts have rejected equal protection challenges to enactments or policies eliminating payroll deductions for union dues while allowing payroll deductions for nonunion organizations. *See Ysursa*, 555 U.S. at 359–60, 129 S. Ct. at 1098–99 (noting "the State is not constitutionally obligated to provide payroll deductions" and holding "Idaho's decision to allow payroll deductions for some purposes but not for [union] political activities is plainly reasonable"); *City of Charlotte v. Local 660, Int'l Ass'n of Firefighters*, 426 U.S. 283, 288–89, 96 S. Ct. 2036, 2039–40 (1976) (rejecting equal protection challenge to city's refusal to deduct union dues while allowing United Way and other payroll deductions); *Bailey v. Callaghan*, 715 F.3d 956, 960 (6th Cir.

2013) (rejecting first amendment and equal protection challenges to Michigan statute prohibiting school payroll deductions for union dues); *S.C. Educ. Ass'n v. Campbell,* 883 F.2d 1251, 1257, 1263–64 (4th Cir. 1989) (rejecting freedom of speech and equal protection challenges to enactment prohibiting payroll deductions for union dues while allowing payroll deductions for charities because the state has no "affirmative obligation . . . to assist [the union] by providing payroll deduction services"); *Ark. State Highway Emps. Local 1315 v. Kell,* 628 F.2d 1099, 1103–04 (8th Cir. 1980) (holding state department could allow automatic payroll deductions for other organizations while denying deductions for union dues); *W. Cent. Mo. Reg'l Lodge No. 50 v. Bd. of Police Comm'rs,* 916 S.W.2d 889, 892–93 (Mo. Ct. App. 1996) (rejecting equal protection challenge to city's policy allowing payroll deductions for United Way and the Kansas City Police Credit Union but not union dues). These decisions are persuasive authority for rejecting the plaintiffs' equal protection challenges under the Iowa Constitution.

The Iowa amendments eliminated payroll deductions for *all* public employee union dues. By contrast, the Wisconsin legislature eliminated payroll deductions for union dues for some public employees while allowing public safety employees to continue using automatic payroll deductions for their union dues. Unions challenged that classification as irrational and based on improper motivations and political favoritism. *Wis. Educ. Ass'n Council v. Walker,* 705 F.3d 640, 653 (7th Cir. 2013).

The United States Court of Appeals for the Seventh Circuit squarely rejected political payback as a basis for an equal protection challenge to the enactment ending union payroll deductions.

> As unfortunate as it may be, political favoritism is a frequent aspect of legislative action. We said as much in *Hearne v. Board of Education,* 185 F.3d 770, 775 (7th Cir.

> 1999). There, members of the Chicago Teachers Union challenged on various constitutional grounds, including the Equal Protection Clause, an act of the Republican-dominated legislature that severely curtailed Chicago teachers' job security relative to teachers in other parts of the state. *Id.* at 773. The unions argued, in part, that the Republican legislature retaliated against them for opposing Republicans in the previous election. *Id.* We candidly remarked, "there is no rule whereby legislation that otherwise passes the proper level of scrutiny . . . becomes constitutionally defective because one of the reasons the legislators voted for it was to punish those who opposed them during an election campaign." *Id.* at 775. We went further stating, "[i]ndeed one might think that this is what election campaigns are all about: candidates run a certain platform, political promises made in the campaign are kept (sometimes), and *the winners get to write the laws.*" *Id.* These sorts of decisions are left for the next election. Accordingly, we must resist the temptation to search for the legislature's motivation for the Act's classifications.

*Id.* at 654 (alteration in original) (emphasis added). The Seventh Circuit recognized it is not the court's role to redraw the legislative classification and held "the payroll dues prohibition survives rational basis review." *Id.* at 657.

The Wisconsin Supreme Court reached the same conclusion. *Madison Teachers, Inc. v. Walker*, 851 N.W.2d 337, 365 (Wis. 2014) (holding the "payroll deduction prohibitions survive the plaintiffs' equal protection challenge under rational basis review"). The Iowa amendment on payroll deductions presents an even smaller target for an equal protection challenge because it treats all public employees alike. We join the foregoing authorities in rejecting the plaintiffs' equal protection challenge to the payroll provision.

As the district court correctly concluded, "The fiscal interests of the government are routinely accepted as a rational basis for legislative activity that is viewed as a cost-saving measure for the public." *See Adams v. Fort Madison Cmty. Sch. Dist.*, 182 N.W.2d 132, 141 (Iowa 1970) ("[T]he state has a compelling interest in seeing that [government]

units are maintained in healthy financial condition."). The legislature could rationally choose to stop helping unions collect dues through payroll deductions. The Iowa Constitution does not require public employers to collect dues for the very unions that sit across the bargaining table negotiating at arms' length for higher wages and costlier employee benefits at taxpayer expense. The State argued that "collective bargaining is expensive, disruptive, and not in the best interest of citizens." We agree with the district court "that the concerns of the legislature regarding the cost of collective bargaining provide a rational basis for making the classification concerning [the] payroll deduction." The district court noted the plaintiffs did not challenge the factual basis for the legislature's cost-saving premise, which the court accepted as a matter of "common knowledge."

We hold the payroll deduction prohibition survives Iowa's rational basis review. *See McQuistion*, 872 N.W.2d at 831. Public employees do not have a constitutional right to payroll deductions for union dues. There is no constitutional equal protection violation merely because voluntary automatic payroll deductions continue for charities or organizations that do not target the public fisc. Employees remain free to retain their union membership and to pay their union dues directly.

House File 291 reflects lawful policy choices by the legislature. The 2017 amendments did not infringe on a fundamental right of speech, association, or equal protection that could justify judicial intervention. The plaintiffs' remedy lies in the elected branches or at the ballot box. *Walker*, 705 F.3d at 654; *see also In re Div. of Criminal Justice State Investigators*, 674 A.2d 199, 204 (N.J. Super. Ct. App. Div. 1996) ("The solution, if there be one, from the viewpoint of the firemen, is that labor unions may someday persuade state government of the asserted value of

collective bargaining agreements, but this is a political matter and does not yield to judicial solution." (quoting *Atkins v. City of Charlotte*, 296 F. Supp. 1068, 1077 (W.D.N.C. 1969))). Indeed, the Sixth Circuit, upholding a Michigan statute prohibiting school districts from using payroll deductions for union dues, aptly observed,

> The applicability of rational-basis review is a strong signal that the issue is one for resolution by the democratic process rather than by the courts. This case is no exception. Public Act 53 proscribes the "use of public school resources" for collection of union dues, but does not bar other state or local employers from using their resources for that same purpose. *See* Mich. Comp. Laws § 423.210(1)(b). The question here is whether there is any conceivable legitimate interest in support of this classification. We hold that there is: the Legislature could have concluded that it is more important for the public schools to conserve their limited resources for their core mission than it is for other state and local employers. The plaintiffs' equal-protection claim therefore fails.

*Bailey*, 715 F.3d at 960. We reach the same conclusion and leave this issue for the democratic process.

**IV. Conclusion.**

For these reasons, we affirm the district court's summary judgment in favor of the defendants.

**AFFIRMED.**

All justices concur except Appel, J., Cady, C.J., and Wiggins, J., who concur in part and dissent in part.

**APPEL, Justice (concurring in part and dissenting in part).**

This case presents two issues. As discussed more fully in *AFSCME v. State*, ___ N.W.2d ___, ___ (Iowa 2019) (Appel, J., dissenting), I dissent from the majority's decision upholding the overinclusive and underinclusive classification of public employees entitled to broader collective bargaining rights.

The plaintiffs in this case also ask us to consider whether another aspect of House File 291, 2017 Iowa Acts ch. 2, §§ 6, 14, 22 (codified at Iowa Code §§ 20.9, .26, and § 70A.19 (2018)), fails rational basis review. The majority rejects the plaintiffs' challenge. For the reasons below, I concur with the majority on this issue.

House File 291 prohibits public employers from administering payroll deduction for employee dues payments to any employee organization and forbids collective bargaining over the subject. Iowa Code § 20.9(3); *id.* § 70A.19. It also forbids collective bargaining over "payroll deductions for political action committees or other political contributions or political activities." *Id.* § 20.9(3). The law allows, however, any other type of payroll deduction for any purpose. For example, payroll deduction may be used for dues to a professional organization, so long as it does not qualify as an employee organization under Iowa Code section 20.3 (2018). *Id.* §§ 70A.17A, .19. Membership dues may not be subject to deduction for groups such as the Iowa State Education Association (ISEA) or the Davenport Education Association that essentially wear two hats, one as an employee organization and the other as a professional organization for teachers.

Why? The district court thought there might be money to be saved. But the record indicates that it would cost more money to remove

the payroll deductions for ISEA and similar organizations than to just leave well enough alone. In short, the dues checkoff provision of the statute in fact imposes costs. If cost savings were the sole reason to support the statute's treatment of union dues checkoff, I would likely find it invalid.

However, the real purpose behind the action is obvious. The legislature intended not to save money, but to weaken unions by making it more difficult for them to collect dues. As a matter of policy, the legislature is free to promote, or hinder, the ability of public employee unions to engage in collective bargaining. The means chosen to make unionization of public employees more difficult—elimination of dues checkoff—rationally achieves that goal. There is no problem of overinclusiveness or underinclusiveness here. *See LSCP, LLLP v. Kay-Decker*, 861 N.W.2d 846, 859 (Iowa 2015); *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 7–8 (Iowa 2004).

As pointed out by the union in this case, while the legislature sought to undercut unions in its approach to dues checkoff in House File 291, it did not repeal or amend Iowa Code section 20.1(1). That provision provides, "The general assembly declares that it is the public policy of the state to promote harmonious and cooperative relationships between government and its employees by permitting public employees to organize and bargain collectively . . . ." Iowa Code § 20.1(1).

Oftentimes, legislative expression of general goals of a statute can be helpful in interpreting ambiguous provisions of a statute. But the legislative language dealing with union dues checkoff is not ambiguous. It is quite clear. The union is not really arguing that Iowa Code section 20.1 should be used as an aid in statutory interpretation. What the union advances is a kind of legislative estoppel theory—having declared a

general goal in the introductory language of a statute, the legislature cannot undermine that goal through subsequent legislative classifications.

But while a general prefatory provision of a statute may be used as a tool of statutory interpretation, such general language cannot be used to suspend or invalidate subsequent unambiguous legislation. And I do not think that use of general prefatory language in a statute prevents the legislature from enacting subsequent legislation that cuts against or limits that general purpose. It may be that the legislature is engaging in political messaging that some might find objectionable, namely, purporting to generally promote collective bargaining while enacting legislation specifically designed to undermine it. But that is a political problem, not a legal one.

For the above reasons, I concur on the issue of dues checkoff. I dissent on the classifications in House File 291 relating to "public safety employees."

Cady, C.J., and Wiggins, J., join this concurrence in part and dissent in part.